Richard D. McCune, CA Bar No. 132124
rdm@mccunewright.com
Steven A. Haskins, CA Bar No. 238865
sah@mccunewright.com
Valerie Savran, CA Bar No. 334190
vls@mccunewright.com
Richard A. Nervig, CA Bar No. 226449
ran@mccunewright.com
**MCCUNE LAW GROUP**
3281 E. Guasti Road, Suite 100
Ontario, California 91761
Telephone:   (909) 557-1250
Facsimile:    (909) 557-1275

Emily J. Kirk, IL Bar No. 6275282*
ejk@mccunewright.com
**MCCUNE LAW GROUP**
231 N. Main Street, Suite 20
Edwardsville, IL 62025
Telephone:   (618) 307-6116
Facsimile:    (618) 307-6161
* Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRIA MOSELY, REJOYCE KEMP, BERENICE CISNEROS, BRUCE PARKER, individually,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & CO., WELLS FARGO BANK, N.A., and DOES 1 through 5,<br><br>Defendants. | Case No. 3:22-cv-01976-DMS-AGS<br><br>Hon. Dana M. Sabraw<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>**[Filed concurrently with Notice of Motion; Declaration of Richard D. McCune; Exhibits; and Proposed Order]**<br><br>Hearing Date: February 10, 2023<br>Time: 1:30 p.m.<br>Courtroom: 13A<br><br>Complaint Filed: 12/13/2022 |

# TABLE OF CONTENTS

Page

I       INTRODUCTION ................................................................................ 1

II      FACTUAL BACKGROUND ............................................................... 2

    A.      Defendants Compelled Arbitration in a Putative Class Action Lawsuit
         Involving Similar Claims Before This Court ................................... 2

    B.      Plaintiffs' Arbitration Claims ......................................................... 3

III     JURISDICTION AND VENUE ......................................................... 8

IV      LEGAL STANDARD ........................................................................ 8

V       ARGUMENT ..................................................................................... 9

    A.      Plaintiffs are Likely to Succeed on the Merits ............................... 9

        1.      The Order Imposes an Illegal Pleading Standard That Renders
             Arbitration Illusory ............................................................... 9

        2.      The Arbitrator Exceeds Her Powers by Preventing Arbitration ......... 12

    B.      Plaintiffs Have Been Irreparably Harmed By Wells Fargo's Actions .......... 13

    C.      The Balance of Equities Tips in Plaintiffs' Favor ......................... 15

    D.      An Injunction is in the Public Interest ......................................... 16

VI      CONCLUSION ................................................................................. 17

- i -

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction
Case No. 3:22-cv-01976-DMS-AGS

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alascom, Inc. v. ITT N. Elec. Co.*,
  727 F.2d 1419 (9th Cir. 1984)..................................................................14, 15

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011)..........................................................................9

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*,
  42 F.3d 1421 (3d Cir. 1994)............................................................................17

*Assoc. Gen. Contractors of Calif., Inc. v. Coal. for Econ. Equity*,
  950 F.2d 1401 (9th Cir. 1991)..........................................................................9

*Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*,,
  No. 3:16-CV-2470, 2017 WL 11573353 (M.D. Pa. Aug. 17, 2017)..............17

*Bernhardt v. L.A. Cty.*,
  339 F.3d 920 (9th Cir. 2003)...........................................................................17

*Bussen v. Westpark Cap. Fin. Servs., LLC*,
  2022 WL 2913830 (Cal. Ct. App. July 25, 2022)...............................................4

*Dayton Area Visually Impaired Persons, Inc. v. Fisher*,
  70 F.3d 1474 (6th Cir. 1995)............................................................................9

*Dotson v. Amgen, Inc.*,
  181 Cal. App. 4th 975 (2010) ..........................................................................17

*Ecopetrol S.A. v. Offshore Expl. & Prod. LLC*,
  46 F. Supp. 3d 327 (S.D.N.Y. 2014)................................................................13

*Eurolines Shipping Co. v. Metal Transp. Corp.*,
  491 F. Supp. 590 (S.D.N.Y. 1980)...................................................................12

*Finastra USA Corp. v. Zepecki*,
  2018 WL 1989508 (N.D. Cal. Mar. 9, 2018)....................................................15

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*,
  512 F.3d 1112 (9th Cir. 2008).........................................................................18

*Goldie's Bookstore, Inc. v. Superior Court*,
  739 F.2d 466 (9th Cir. 1984)...........................................................................14

*Halligan v. Piper Jaffray, Inc.*,
  148 F.3d 197 (2d Cir. 1998)............................................................................13

*Home Ins. Co. v. RHA/PA Nursing Homes, Inc.*,
  127 F. Supp. 2d 482 (S.D.N.Y. 2001)..............................................................13

- ii -

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction
Case No. 3:22-cv-01976-DMS-AGS

**TABLE OF AUTHORITIES, Cont.**

Page(s)

*Inspection Mgmt. Sys., Inc. v. Open Door Inspections, Inc.*,
2009 WL 805813 (E.D. Cal. Mar. 26, 2009) ...................................................14

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
4 F.3d 819 (9th Cir. 1993) .................................................................................16

*Island Creek Coal Sales Co. v. City of Gainesville, Fla.*,
729 F.2d 1046 (6th Cir. 1984) ...........................................................................13

*Jones v. Deutsche Bank AG*,
2007 WL 1456041 (N.D. Cal. May 17, 2007) ..................................................14

*MacClelland v. Cellco P'ship*,
2022 WL 2390997 (N.D. Cal. July 1, 2022) ....................................................11

*Macquarie Holdings USA Inc. v. Rode*,
2012 WL 12882417 (C.D. Cal. Jan. 17, 2012) ...........................................15, 16

*Medina v. Found. Rsrv. Ins. Co.*,
1997-NMSC-027, 123 N.M. 380 .........................................................................4

*Mendez v. Sony Computer Ent. Am., LLC*,
2021 WL 5702153 (D. Idaho Dec. 1, 2021) .......................................................4

*Morgan Stanley & Co., LLC v. Couch*,
134 F. Supp. 3d 1215 (E.D. Cal. 2015) .............................................................15

*New England Power Co. v. Asiatic Petroleum Corp.*,
456 F.2d 183 (1st Cir. 1972) .............................................................................15

*Oxford Health Plans*,
569 U.S. .............................................................................................................13

*Ragsdale v. Wilshire Com. Cap. LLC*,
2021 WL 4699526 (C.D. Cal. Apr. 30, 2021) ..................................................10

*Regents of Univ. of California v. Am. Broad. Companies, Inc.*,
747 F.2d 511 (9th Cir. 1984)..............................................................................17

*Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
944 F.2d 597 (9th Cir. 1991)..............................................................................14

*Rondeau v. Mosinee Paper Corp.*,
422 U.S. 49 (1975)................................................................................................8

*Siemens Bldg. Techs., Inc. v. Camacho*,
168 F. Supp. 2d 425 (E.D. Pa. 2001) ................................................................17

- iii -

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction
Case No. 3:22-cv-01976-DMS-AGS

1

## TABLE OF AUTHORITIES, Cont.

2

Page(s)

3

*Steiner v. Apple Computer, Inc.*,
4   2008 WL 1925197 (N.D. Cal. Apr. 29, 2008) ................................................14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
5   559 U.S. 662 (2010)......................................................................................12, 13

6

*Stormans, Inc. v. Selecky*,
7   586 F.3d 1109 (9th Cir. 2009)...........................................................................16

8

*Ward v. Est. of Goossen*,
  2014 WL 7273911 (N.D. Cal. Dec. 22, 2014)..............................................15, 17
9

*Weinberger v. Romero-Barcelo*,
10   456 U.S. 305 (1982).........................................................................................17

11 *Winig v. Cingular Wireless LLC*,
  2006 WL 3201047 (N.D. Cal. Nov. 6, 2006) ....................................................14
12

13 *Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008).........................................................................................9, 16
14

*Yakus v. United States*,
15   321 U.S. 414 (1944)...........................................................................................9

16

17 **Statutes**

18 15 U.S.C. § 1693m...............................................................................................8
28 U.S.C. § 1331.................................................................................................8
19 28 U.S.C. § 1367(a)............................................................................................8
20 28 U.S.C. § 2201.................................................................................................8

21 **Rules**

22
23 Federal Rule of Civil Procedure 65(a)...................................................................9

24
**Regulations**
25

26 12 C.F.R. §§ 1005 .............................................................................................2

27

28

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction
Case No. 3:22-cv-01976-DMS-AGS

# I    INTRODUCTION

Plaintiffs Alexandria Mosley,[1] Rejoyce Kemp, Berenice Cisneros, and Bruce Parker ("Plaintiffs") submitted their legal claims against Defendants Wells Fargo & Co. and Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendants") to arbitration with the American Arbitration Association ("AAA") on the premise that Wells Fargo would participate as promised in a forum intended to provide an efficient and quick resolution to their claim. But Wells Fargo had no intention of submitting to arbitration, or any other forum as promised, even in a case where only a small percentage of consumers have asserted their claims. Wells Fargo's arbitration agreement is the legal equivalent of a Potemkin Village. To the outside world, it masquerades as a place for consumers to preserve their rights. But nothing exists behind the façade.

Plaintiffs' last resort is this Court. Every day that arbitration is delayed further violates Plaintiffs' rights to resolve their claims, both as a matter of due process and fundamental contract. And if Wells Fargo gets its way, delay will become a permanent bar to arbitration, just as Wells Fargo has always intended. Plaintiffs ask the Court to restore their rights.

To that end, Plaintiffs seek a preliminary injunction barring Wells Fargo and AAA from enforcing the edicts[2] that have halted their arbitrations. In short, Plaintiffs seek the arbitration process Wells Fargo promised them. In the alternative, Plaintiffs request a total stay of arbitration proceedings pending a hearing on whether Defendants have violated their arbitration agreement with Plaintiffs, which would release Plaintiffs from the arbitration agreement and allow them to proceed in court more quickly and efficiently than the promised arbitration in any event. Either way, Plaintiffs must be

---

[1] Ms. Mosley was errantly called Alexandria "Mosely" in the Complaint.

[2] The order most egregiously blocking progress is an order issued by Process Arbitrator Anita Mae Shapiro in October 2022 (the "AAA Process Order"). It is attached as Exhibit G to the Declaration of Richard D. McCune ("McCune Decl.").

permitted to pursue their claims in some forum, somewhere, and they have been denied that right up through now.

## II      FACTUAL BACKGROUND

**A.      Defendants Compelled Arbitration in a Putative Class Action Lawsuit Involving Similar Claims Before This Court**

Prior to the filing of the current Plaintiffs' claims in arbitration, on November 25, 2020, Plaintiffs' counsel filed a putative class action on behalf of a similarly wronged consumer against Defendants for violation of the Electronic Fund Transfer Act, 12 C.F.R. §§ 1005, *et seq.* ("Regulation E"), and violation of California's Unfair Competition Law ("UCL") in the United States District Court for the Southern District of California. (Declaration of Richard D. McCune ("McCune Decl."), ¶ 2, Ex. A).

Defendants filed a motion to compel that plaintiff's claims to arbitration. (McCune Decl., ¶ 3, Ex. B). In its motion, Defendants insisted that arbitration was the proper forum for the resolution of plaintiff's claims. (*Id.*) Specifically, Defendants cited the Federal Arbitration Act ("FAA"), stating that "the FAA embraces a strong public policy in favor of arbitration," including that arbitrations should proceed as "quickly and easily as possible." (*Id.*)

This Court granted Defendants' motion to compel in that case as to both of plaintiff's claims, and further ordered that the arbitrator would decide questions of arbitrability. *Id.* Defendants postured as though arbitration would be both efficient and quick, and that the arbitration would proceed in accordance with the contract's terms, which stated that arbitration would be "beneficial" because it would provide "a legally binding decision in a more streamlined, cost-effective manner than a typical court case."

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction
Case No. 3:22-cv-01976-DMS-AGS

(McCune Decl., Ex. D, p. 35.)[3] However, it is clear that Defendants always intended to force consumers into arbitration as a self-serving tactic, with no intention of actually arbitrating. The private and confidential nature of arbitration, devoid of judicial oversight, is the perfect forum in which Defendants can continue to perpetuate the same consumer abuses they have been involved in for years.[4]

**B.    Plaintiffs' Arbitration Claims**

When a customer opens a new checking account at Wells Fargo, he or she agrees to the terms of Wells Fargo's Deposit Account Agreement ("Agreement"), which contains an arbitration clause. (McCune Decl., ¶ 5, Ex. D). Plaintiffs did not only open accounts with Wells Fargo; each was also enrolled in Wells Fargo's Regulation E overdraft program, which permitted Wells Fargo to charge expensive fees when it covered overdrafts on one-time debit card and ATM transactions. Plaintiffs contend that Wells Fargo violated Regulation E and illegally and improperly took money from their accounts under the pretext of lawfully assessing an overdraft fee.

Each Plaintiff submitted an individual arbitration demand detailing Wells Fargo's alleged violations of Regulation E of the Federal Electronic Fund Transfer Act, state unfair competition laws, and/or the Agreement's terms. (McCune Decl., ¶ 7). Each demand was filed consistent with AAA's Consumer Arbitration Rules, specifically Rule 2, which requires that a demand (1) briefly explain the dispute; (2) list the names and addresses of the consumer and the business, and, if known, the names of any representatives of the consumer and the business; (3) specify the amount of money in

---

[3] As Defendants laid out in their motion, "the role of the Court in applying the FAA is limited to determining whether a valid agreement to arbitrate exists, and whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the FAA requires the Court to enforce the arbitration agreement *in accordance with its terms*." (McCune Decl., Ex. B) (emphasis added).

[4] Defendants' many financial abuses have been brought to light in recent years, proving Defendants are well accustomed to employing unscrupulous practices at the expense of consumers. (McCune Decl., ¶ 4, Ex. C).

---

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction
Case No. 3:22-cv-01976-DMS-AGS

dispute, if applicable; (4) identify the requested location for the hearing if an in-person hearing is requested; and (5) state the claimant's desired relief. (AAA Consumer Arbitration Rules, R-2(a)(1), Amended and Effective September 1, 2014). Each demand was compliant: it contained a brief description of the dispute, named the parties, specified the matters in dispute, requested an in-person hearing, and relayed the relief each Plaintiff seeks. (*Id.*, Ex. E).[5]

Because Plaintiffs' claims are based on uniform policies and documents Wells Fargo has followed and used for years, millions of consumers likely have similar claims. (*Id.*, ¶ 8). Since the beginning of 2022, Plaintiffs are four of about 3,000 individuals who have served arbitration demands to Wells Fargo. (*Id.*) McCune Law Group represents many of these Claimants in arbitration, as in this lawsuit. (*Id.*)

Plaintiffs' arbitration demands were fully compliant with the Agreement and AAA's Consumer Arbitration Rules. In response to their demands, Plaintiffs also received confirmatory emails stating that AAA had received their demands and arbitration proceedings would commence. (McCune Decl., ¶ 9, Ex. F).[6]

The arbitration agreement requires consumers to waive all rights to participate in a class or other collective action. (*Id.*, Ex. D, p. 35.) Thus, each arbitration hearing must be individual in nature—meaning that in cases alleging fault with Wells Fargo's uniform

---

[5] *See, e.g., Bussen v. Westpark Cap. Fin. Servs., LLC*, No. B304977, 2022 WL 2913830, at *6 (Cal. Ct. App. July 25, 2022) (noting the more general pleading requirements under AAA Consumer Arbitration Rules, Rule 2). *See also Mendez v. Sony Computer Ent. Am., LLC*, No. 1:20-CV-00588-DCN, 2021 WL 5702153, at *2 (D. Idaho Dec. 1, 2021), reconsideration denied, No. 1:20-CV-00588-DCN, 2022 WL 2179961 (D. Idaho June 15, 2022) (finding that a demand must only meet the requirements set out in Consumer Arbitration Rule 2); *Medina v. Found. Rsrv. Ins. Co.*, 1997-NMSC-027, ¶ 9, 123 N.M. 380, 382 (finding that "[a]rbitration is a special statutory proceeding which requires application of procedural rules that may conflict with the more general rules of civil procedure").

[6] Plaintiffs received "AAA Initiation Letters" acknowledging AAA's receipt of their demands and that their demands met the filing requirements. Each letter contained an attached "case list" of the individual demands that had been properly filed as of that date, and the letters corresponding to Plaintiffs' and other Claimants' who filed prior to that date claims are included.

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction
Case No. 3:22-cv-01976-DMS-AGS

conduct, tens of thousands (if not hundreds of thousands, or even millions) of individual arbitrations may become necessary. There must be enough arbitrators to handle them all, and those arbitrators must be compensated. Wells Fargo took on the responsibility of paying these fees as part of the Agreement. (McCune Decl., Ex. D, p. 35.)[7] And Plaintiffs relied on these promises when they demanded arbitration. Wells Fargo is one of America's largest banks, with over 70 million customers—the nearly 3,000 arbitration claimants to date represent an immaterial minority—and all have been subjected to the same conduct as Plaintiffs.

In light of these claims, AAA has since appointed Anita Rae Shapiro as the Process Arbitrator overseeing coordination of the individual demands served to Wells Fargo. (McCune Decl., ¶ 10). On October 27, 2022, the Process Arbitrator issued an Order applying to all current and future claims. (*Id.*, ¶ 11). Since the Process Arbitrator's appointment, the arbitration has ground to a halt. (*Id.*, ¶ 12). Wells Fargo refuses to pay the necessary fees to adequately staff the arbitrations, though it agreed to do so in the Agreement. (*Id.*) Only two arbitrators have been appointed for two individual claims, leaving nearly 3,000 claims without any promise of remedy. (*Id.*) What is more, the arbitrations have been ordered not to proceed unless **all Claimants**, including Plaintiffs, amend their demands to include evidentiary proof of Wells Fargo's wrongdoing. (*Id.*) Put another way, Plaintiffs will never get their promised hearing unless all 3,000

---

[7] The Agreement states "[Wells Fargo] will pay any costs that are required to be paid by us under the arbitration administrator's rules and procedures, and subject to applicable law…" Likewise, the AAA Consumer Arbitration Rules require that outside of the filing fee, all costs of a consumer arbitration, including arbitrator expenses, should be borne by the business. *See* AAA Consumer Arbitration Rules, Costs of Arbitration, p. 33, Amended and Effective September 1, 2014, available at: Consumer_Rules_Web_2.pdf (adr.org) (last visited Dec. 17, 2022).

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction
Case No. 3:22-cv-01976-DMS-AGS

claimants (or more, as more claims are made) submit demands that satisfy the arbitrary pleading rules that AAA has now established for Wells Fargo alone.[8] (*Id.*)

In other words, Wells Fargo was advocating for the complete halt of these arbitrations on the one hand, even as it was supposedly offering a forum for efficiently resolving these claims on the other. Now, while being barred from grouping their claims in a class action (in court or arbitration), they must wait as 3,000 individual claimants, whom Plaintiffs do not control, are required to produce evidentiary proof beyond anything that would be required in a court filing, to even advance their case to the appointment of an arbitrator.[9]

Wells Fargo then digs deeper into bad faith by making it impossible for Plaintiffs and other Claimants to satisfy the requirements supposedly necessary to restart the arbitration process. Plaintiffs require information from Wells Fargo to determine the scope of their claims. (McCune Decl., ¶ 13). This information is regularly exchanged in discovery, but AAA is requiring Plaintiffs to provide it up front to meet its arbitrarily imposed pleading standards. (*Id.*)  The problem: Wells Fargo refuses to share the information with Plaintiffs—even information about Plaintiffs' own accounts—***citing the proceedings Wells Fargo has itself stalled***. (*Id.*)

For instance, Claimants bringing Regulation E claims, at a minimum, need access to their agreements and monthly statements to determine the full scope of alleged wrongdoing and damages. (*Id*. ¶ 14). While some Claimants may have this information, most do not, requiring financial institutions to provide it during discovery. (*Id.*) But here,

---

[8] The arbitrary pleading standards dictated by the Order include that *all claims* must include "1) Claimant's Wells Fargo account number for the account at issue, 2) facts to establish each Claimant was enrolled in DCOS during the time period at issue and 3) facts sufficient to establish that each Claimant incurred overdraft fees in connection with transactions covered by Regulation E." (McCune Decl., Ex. G).

[9] The Order ultimately states that "the invoicing of AAA fees is stayed for *all Claims* that have not already been invoiced *and for all new Claims filed with AAA* until the requirements in paragraph two have been satisfied." (McCune Decl., Ex. G) (emphasis added).

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction
Case No. 3:22-cv-01976-DMS-AGS

1   Plaintiffs (and thousands of others) cannot obtain the information they need to satisfy the

2   arbitrary pleading standard imposed upon them, yet must now plead this information

3   before Wells Fargo will engage with them. (*Id.*)   And worse, Wells Fargo is holding

4   some claims, such as those based on the APSN theory, hostage completely, by requiring

5   Claimants with Regulation E claims to satisfy the newly imposed pleading standards

6   before other, unrelated claims can go forward.[10] (*Id.*) But when APSN claims are at

7   issue, most of the unlawful transactions cannot be determined without information solely

8   in Wells Fargo's possession. That fact is one reason that the Consumer Financial

9   Protection Bureau recently singled out APSN transactions as particularly egregious, and

10  Wells Fargo has signed a consent order to repay a small percentage of those claims.[11]

11  Wells Fargo's arbitration practices thus reinforce the reasons its overdraft fees are so

12  egregious in the first place –internal data and documents must be produced and then

13  analyzed by an expert to uncover the wrongdoing.  In a world where arbitration is an

14  actual dispute resolution method, resolving claims like these might be uniquely suited to

15  arbitration because of the possibility for targeted and informal discovery. In return for

16  _____

17

18  [10] Notably, some Claimants have Regulation E claims, some have APSN claims, and
    some have both. (McCune Decl., ¶ 15). While all of these claims relate to Well Fargo's
19  assessment of overdraft fees, they are different claims. (*Id.*) APSN claims are brought
    under a breach of contract theory and result from Wells Fargo assessing overdraft fees to
20  customers on transactions that are approved on a positive available balance, but later
    post on a negative balance resulting in a fee. (*Id.*) Claimants allege that Wells Fargo's
21  assessment of overdraft fees under this circumstance is improper per the terms of the
    Agreement. (*Id.*) This claim has nothing to do with the assessment of fees under
22  Regulation E. (*Id.*) In fact, APSN Claimants may not even be opted-in to Regulation E
    overdraft coverage (*Id.*) Yet, AAA will not permit these claims to move forward until
23  other Claimants provide evidence of a Regulation E violation. (*Id*, Ex. G) Moreover,
    APSN Claimants will never be able to provide the evidentiary support AAA is requiring
24  because the only party with access to APSN damages is Wells Fargo. (*Id.*, ¶ 15).
    Claimants have no way through statements or customer account access to see which
25  transactions Wells Fargo approved on a positive balance, yet settled on a negative
    balance. (*Id.*) Wells Fargo's transactional data must be reviewed for this determination.
26  (*Id.*) Normally, this information is provided during discovery. (*Id.*) Here, AAA is
    requiring evidentiary information up front, but is not requiring Wells Fargo to produce
27  it, essentially barring APSN claims from moving forward. (*Id.*)

28  [11] *See* https://files.consumerfinance.gov/f/documents/cfpb_wells-fargo-na-
    2022_consent-order_2022-12.pdf (last visited January 8, 2023).

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction
Case No. 3:22-cv-01976-DMS-AGS

waiving class rights, Claimants obtain information about their claims through informal processes. But the result of Wells Fargo's intransigence is that Plaintiffs effectively lack any forum for their claims.

### III     JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, 15 U.S.C. § 1693m, 28 U.S.C. § 1367(a), and 28 U.S.C. § 2201. Furthermore, while the arbitration agreement generally demands that the parties resolve their claims in arbitration, it also provides that "Wells Fargo or you each can exercise any lawful rights or use other available remedies to . . . Obtain provisional or ancillary remedies such as injunctive relief …." (Wells Fargo Deposit Account Agreement ("Account Agreement"), Ex. D, p. 36.) Plaintiffs here seek injunctive relief, not monetary damages.

Venue is proper here because Wells Fargo transacts business, the parties entered into contracts, and Wells Fargo executed the unlawful policies and practices which are the subject of this action, in this District.

### IV     LEGAL STANDARD

An injunction is an equitable remedy and should issue when a threat of irreparable harm combines with the inadequacy of money damages. *See Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 61 (1975). The court "balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction." *Yakus v. United States*, 321 U.S. 414, 440 (1944). A plaintiff seeking a preliminary injunction must establish (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

These four considerations are "factors to be balanced, not prerequisites that must be met." *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1480 (6th Cir. 1995). In the Ninth Circuit, the *Winter* factors are evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply

-8-

toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). These formulations are not different tests but represent two points on a sliding scale, upon which the degree of irreparable harm increases as the probability of success on the merits decreases. *Assoc. Gen. Contractors of Calif., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991).

## V    ARGUMENT

Plaintiffs have satisfied the elements for a preliminary injunction under Federal Rule of Civil Procedure 65(a), as detailed below. They are entitled to a preliminary injunction because: (1) they are likely to succeed on the merits of their claims; (2) they will suffer irreparable injury if the injunction is denied; (3) the harm Plaintiffs will suffer outweighs any harms granting the injunction may cause Wells Fargo; and (4) granting the injunction is in the public interest.

### A.    Plaintiffs are Likely to Succeed on the Merits

The parties' Agreement provides that either party "can exercise any lawful rights or use other available remedies" to "obtain provisional or ancillary remedies such as injunctive relief…" (Wells Fargo Deposit Account Agreement ("Account Agreement"), Ex. D, p. 36.) This Court is thus an appropriate forum for obtaining this remedy. *See Ragsdale v. Wilshire Com. Cap. LLC*, No. CV 21-00549 PA (ASX), 2021 WL 4699526, at *4 (C.D. Cal. Apr. 30, 2021) (finding that where a contract containing an arbitration provision allows for a party to pursue injunctive relief in court, an injunctive claim is proper).

### 1.    The Order Imposes an Illegal Pleading Standard That Renders Arbitration Illusory

Plaintiffs demonstrate a likelihood of success on the merits because they cannot proceed with arbitration given the artificial constrictions placed upon them. Requiring additional pleading standards and tying the progress of Plaintiffs' claims to the pleadings

of thousands of other individuals is facially unfair—the imposed pleading standards exist in no other forum, and for good reason.[12] They effectively turn every individual with a claim into a class representative—consolidating the proceedings over Wells Fargo's own putative objections. And with these upside-down rules in place, Plaintiffs have no recourse for Wells Fargo's obstruction. Whatever Plaintiffs bargained for, it wasn't for Wells Fargo to prevent their access to a proper forum. The denial of Plaintiffs' rights to the bargained-for forum alone is sufficient to demonstrate a likelihood of success on the merits.

Likewise, Wells Fargo promised that arbitration would be "beneficial" because it would provide "a legally binding decision in a more streamlined, cost-effective manner than a typical court case." (McCune Decl., Ex. D, p. 35.) Wells Fargo promised that if "you have a dispute with us, we hope to resolve it as quickly and easily as possible." (*Id.*) But in practice, it uses the arbitration agreement as a sword and a shield; the clause forces consumers into arbitration, while simultaneously preventing them from arbitrating.

Courts look askance at similar circumstances. In *MacClelland v. Cellco P'ship*, No. 21-CV-08592-EMC, 2022 WL 2390997, at *1 (N.D. Cal. July 1, 2022) Plaintiffs alleged that Verizon engaged in false advertising by failing to disclose an "Administrative Charge" for wireless services in an adhesion contract. They also alleged that applicable dispute resolution provisions were unconscionable, and thus unenforceable. *Id.* at *2. The court reasoned that an arbitration demand protocol "requiring the consumers who retain counsel willing to represent them in cases such as this to wait months, more likely years *before they can even submit* a demand for arbitration" was unreasonably favorable to Verizon. *Id*. at *12 (emphasis added). The court further noted that Verizon's *self-serving* demand protocol was inconsistent with

---

[12] These standards don't even exist elsewhere within AAA.

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction
Case No. 3:22-cv-01976-DMS-AGS

1    AAA's own rules, declaring that Verizon's protocol "has little in common with the
2    Supplementary Rules. It is one thing to set up a bellwether system to adjudicate a group
3    of cases with the purpose of facilitating global or widespread resolution via ADR. It is
4    another to *formally bar the timely adjudication* of cases…" *Id.* at *14 (emphasis added).
5         Plaintiffs here agreed to a contract of adhesion, arbitration provision included,
6    when opening their accounts. But as in *MacClelland*, Plaintiffs cannot obtain the
7    promised arbitration. Their claims are frozen, stuck indefinitely in purgatory, and unable
8    to move forward. Moreover, they are in that state because AAA and Wells Fargo created
9    these unilaterally applicable rules under AAA's Supplementary Rules for Multiple Case
10   Filings ("Supplementary Rules"). The Supplementary Rules were implemented on
11   August 1, 2021, after each Plaintiff opened their account. While Plaintiffs were told that
12   the arbitration would be conducted under AAA's rules, Wells Fargo never told
13   consumers that they would be subject to the loss of substantive rights such as any
14   arbitration hearing at all. Indeed, consumers were never told that the AAA rules could be
15   changed, even though they were told that Wells Fargo could change the account
16   agreement and would provide notice of those changes. And, of course, Wells Fargo
17   never advised consumers that AAA rules could be unilaterally changed so that if even as
18   few as 25 of Wells Fargo's 70 million customers filed arbitrations regarding the same
19   common conduct, their rights were subject to Wells Fargo holding them hostage and a
20   AAA-appointed process administrator grinding all pending arbitrations to a halt.
21   Plaintiffs (and other consumers) not only did not agree to any of this, but they could
22   have never known what they were agreeing to.
23        In fact, the Agreement never contemplated such onerous conditions, and the
24   benefits resulting from this arrangement can only benefit Wells Fargo. As such, Wells
25   Fargo should be enjoined from blocking the arbitration process, or, in the alternative,
26   this Court should stay the arbitration proceedings so it can decide the proper contractual
27   forum on the merits.
28

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction
Case No. 3:22-cv-01976-DMS-AGS

As such, Plaintiffs are likely to succeed in showing that Wells Fargo violates the Agreement by failing to provide them with the promised arbitrations.

### 2.    The Arbitrator Exceeds Her Powers by Preventing Arbitration

The Federal Arbitration Act (Title 9 of the United States Code) governs any dispute brought in arbitration. (Ex. D, p. 35.) As an alternative ground for an injunction, one of the grounds for vacating an arbitration award is "where the arbitrators exceeded their powers…"[13] The Supreme Court has clarified that this burden is met "only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010).

In *Stolt-Nielsen*, the Supreme Court found that the arbitration panel imposed its own policy choice and thus exceeded its powers. *Id.* at 677. Deciding whether the contract allowed for class arbitration in the absence of express consent, the panel did not consider the FAA, maritime law, or New York law, but rather "proceeded as if it had the authority of a common-law court to develop what it viewed as the best rule to be applied in such a situation." *Id.* at 673-74. The court ultimately confirmed that an arbitrator's role is "to interpret and enforce a contract, not to make public policy." *Id.* at 672; *see also Oxford Health Plans*, 569 U.S. at 569–70 (finding that a court can overturn the arbitrator's determination under §10(a)(4) only when the arbitrator exceeded his contractually delegated authority by issuing an award based on his own policy determinations).

---

[13] Arbitration awards are generally challenged after the arbitration is completed and a final award issued. But here, Plaintiffs cannot access the arbitral forum. Thus, in every practical way there has been a final resolution warranting intervention. *See Eurolines Shipping Co. v. Metal Transp. Corp.*, 491 F. Supp. 590, 592 (S.D.N.Y. 1980) (finding that an 'interim' award that finally and definitively disposes of a separate independent issue may be confirmed 'notwithstanding the absence of an award that finally disposes of all the claims that were submitted to arbitration.'").

In another case, the Sixth Circuit upheld the district court's confirmation of an interim award where it would prevent a party from terminating a contract, preserving the status quo pending an arbitration proceeding with AAA. *See Island Creek Coal Sales Co. v. City of Gainesville, Fla*., 729 F.2d 1046, 1047 (6th Cir. 1984). The court agreed with the lower court's finding that "the interim award dispose[d] of one self-contained issue, namely, whether the City [was] required to perform the contract during the pendency of the arbitration proceedings. Th[is] issue is a separate, discrete, independent, severable issue." *Id.* at 1049; *see also The Home Ins. Co. v. RHA/PA Nursing Homes, Inc.,* 127 F. Supp. 2d 482, 487–88 (S.D.N.Y. 2001)(arbitral award providing interim relief was final because it entitled party to possession of sum pending final arbitration on merits); *Ecopetrol S.A. v. Offshore Expl. & Prod. LLC*, 46 F. Supp. 3d 327, 337 (S.D.N.Y. 2014) (finding that "interim arbitral awards thus required specific action, resolved the rights and obligations of the parties with respect to the interim period at issue, and did so without in any way affecting future decisions of the arbitral panel. Accordingly, the interim arbitral awards are final").

Here, Plaintiffs' rights are imperiled because they have been denied their promised forum. *See Halligan v. Piper Jaffray, Inc*., 148 F.3d 197, 204 (2d Cir. 1998) (holding that manifest disregard existed where "arbitrators were correctly advised of the applicable legal principles…and they ignored the law…"). They have been prevented from pursuing their claims in disregard of all applicable law, rules, and the underlying Agreement. Plaintiffs cannot receive the alleged benefits of arbitration without *actually arbitrating their claims.* Unless the Court intervenes, the arbitration agreement will be not only illusory, it will bar Plaintiffs' claims altogether. This cannot be.

**B.   Plaintiffs Have Been Irreparably Harmed By Wells Fargo's Actions**

Irreparable harm is the single most important prerequisite for a preliminary injunction. *See Inspection Mgmt. Sys., Inc. v. Open Door Inspections, Inc*., No. 209-CV-00023-MCE-GGH, 2009 WL 805813, at *3 (E.D. Cal. Mar. 26, 2009). The definition of irreparable harm is notably imprecise but most often equates to injury irreducible to

-13-

money damages. *See, e.g. Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.,* 944 F.2d 597, 603 (9th Cir. 1991) ("It is true that economic injury alone does not support a finding of irreparable harm, *because such injury can be remedied by a damage award.*") (emphasis added); *see also Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 471 (9th Cir. 1984)("Mere financial injury ... will not constitute irreparable harm *if adequate compensatory relief will be available in the course of litigation.*") (emphasis added).

The likelihood of irreparable harm is significant here. Even if Wells Fargo's relents on its roadblock, no monetary value can compensate Plaintiffs for the loss of time and delay they have suffered. *See Steiner v. Apple Computer, Inc.,* 2008 WL 1925197, *5 (N.D. Cal. Apr. 29, 2008) (finding that loss of substantial time constitutes irreparable harm); *see also Winig v. Cingular Wireless LLC,* No. C06-4297 MMC, 2006 WL 3201047, at *2 (N.D. Cal. Nov. 6, 2006) (finding that a party's prolonged delay constitutes irreparable harm); *Jones v. Deutsche Bank AG*, No. C 04 05357 JW, 2007 WL 1456041, at *2 (N.D. Cal. May 17, 2007) (same).

Irreparable harm also exists where a party is deprived of the agreed-upon means for resolving disputes. *Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984). In *Alascom*, the court found irreparable harm where a party would have been forced to "undergo the expense and delay of a trial before being able to appeal," and as a result, "the advantages of arbitration—speed and economy—are lost forever." *Id.*; *see also New England Power Co. v. Asiatic Petroleum Corp.,* 456 F.2d 183, 186 (1st Cir. 1972) (finding that denial of arbitration process "effectively deprives at least one of the parties to the dispute of one of the principal objects for which he has contracted–that is, a relatively expeditious and inexpensive preliminary resolution of any controversy…") (emphasis added); *Finastra USA Corp. v. Zepecki,* No. 18-CV-00725-WHO, 2018 WL 1989508, at *5 (N.D. Cal. Mar. 9, 2018) (finding irreparable harm in arbitration where party will "lose its bargained for right."); *Ward v. Est. of Goossen,* No. 14-CV-03510-TEH, 2014 WL 7273911, at *4 (N.D. Cal. Dec. 22, 2014) (finding irreparable harm

-14-

because the defendants would otherwise be deprived of "the speed, economy, and specialized nature of the arbitration procedure…"). Here, Plaintiffs have been denied the right to arbitrate their claims and thus denied the benefit of their bargain.

Courts have also found irreparable harm where an individual must arbitrate claims in a manner inconsistent with the parties' agreements. In *Macquarie Holdings USA Inc. v. Rode*, No. CV1200093DMGCWX, 2012 WL 12882417, at *1 (C.D. Cal. Jan. 17, 2012), Macquarie sought to enjoin its opponent from proceeding in arbitration with the Financial Industry Regulatory Authority ("FINRA"), a forum to which it did not agree. The court determined that requiring Macquarie to arbitrate in a manner inconsistent with the parties' contract would "completely deprive Macquarie of the benefit of its bargain," and thus, held that Macquarie satisfied the irreparable harm standard. *Id*. at *4; *see also Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, n.21 (E.D. Cal. 2015) (collecting cases) ("[M]ost, if not all courts hold that being required to arbitrate a dispute that the parties did not agree to arbitrate is *per se* irreparable harm.").[14]

Plaintiffs are ready and willing to arbitrate, but Wells Fargo only stonewalls. If the arbitration cannot proceed as promised, then Plaintiffs should be free to resolve the claim in another forum. Either way, this element weighs in favor issuing the injunction now.

**C.    The Balance of Equities Tips in Plaintiffs' Favor**

Where the harm a plaintiff would suffer absent injunctive relief outweighs the harm the defendant would suffer if the injunction issues, injunctive relief is appropriate. *See Winter*, 555 U.S. at 33. A court must "balance the interests of all parties and weigh the damage to each" in determining how to balance the equities. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). In addition, "the relative size and strength

---

[14] Of course, Plaintiffs recognize that their situation is distinguishable, in that they are demanding an arbitration Wells Fargo is hellbent on preventing. But factual differences aside, the underlying premise is the same: the unfair enforcement, or denial, of a contractual dispute resolution forum constitutes irreparable harm.

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction
Case No. 3:22-cv-01976-DMS-AGS

of each enterprise may be pertinent to this inquiry." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993).

The balance of hardships tips strongly in Plaintiffs' favor here because they are unable to resolve their claims pursuant to the agreed-upon procedure. And Wells Fargo would suffer no undue hardship if the injunction issues because it agreed to arbitration, including the accompanying costs. *See Macquarie*, 2012 WL 12882417, at *4 (finding a party's loss of time to be irreparable, and also that the balance of equities tipped in that party's favor because the loss of time outweighed any negligible harm to the other party). This element weighs in favor of the preliminary injunction.

**D.    An Injunction is in the Public Interest**

The public interest inquiry addresses the impact of the requested injunction on non-parties. It embodies the Supreme Court's direction that, "in exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Bernhardt v. L.A. Cty.*, 339 F.3d 920, 931–32 (9th Cir. 2003) (internal quotation marks and citation omitted) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Furthermore, where the movant demonstrates a likelihood of success on the merits and irreparable injury, public interest will nearly always "favor" the movant. *See Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994).

Individual consumers like Plaintiffs, who naturally possess unequal bargaining power, should not be punished by the very process corporations force them into using. *See Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 983 (2010); *see also Ward*, 2014 WL 7273911, at *5 (N.D. Cal. Dec. 22, 2014) (finding that "[t]he policy underlying the FAA is to promote judicial efficiency and economy."). If Plaintiffs are going to be contractually required to arbitrate, then they should be permitted to arbitrate. But if Plaintiffs are not permitted to arbitrate, as is the case here, there exists no other forum for resolving their claims. *See Siemens Bldg. Techs., Inc. v. Camacho*, 168 F. Supp. 2d 425, 427 (E.D. Pa. 2001) (finding "it is in the public interest to enforce valid contractual

-16-

obligations…") It is furthermore always in the public interest to protect the legal rights of consumers. *See Regents of Univ. of California v. Am. Broad. Companies, Inc*., 747 F.2d 511, 521 (9th Cir. 1984)

Moreover, this litigation alone demonstrates the likely expenditure of time and resources that will occur if Plaintiffs are not free to arbitrate their claims. This also weighs in favor of the public interest. *See Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.,* No. 3:16-CV-2470, 2017 WL 11573353, at *4 (M.D. Pa. Aug. 17, 2017) (finding that "there is a great public interest in the efficient use of judicial resources").

And Plaintiffs are not alone in being stonewalled. 3,000 other individuals are currently in the same position. Meanwhile, Wells Fargo has millions of other customers subject to similar claims because its conduct is uniform to all of its customers. *See Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008) (holding that the court could consider similarly situated non-parties in considering the public interest). This element also weighs in favor of granting the injunction.

## VI    CONCLUSION

The premise that consumer arbitration is the future of dispute resolution has long passed into cliché, but it will be no more than a fiction if consumers seeking to press their claims in arbitration find the door barred prior to entry. If that becomes the case, multi-billion-dollar corporate actors will constitute a law unto themselves, a disastrous outcome to contemplate. Perhaps Wells Fargo is an outlier among corporations of its size and bringing it alone to heel will be enough. Those are questions for another day. For now, it is enough that the Court require Wells Fargo to make its promises of arbitration match the reality Plaintiffs face. To that end, Plaintiffs ask the Court to grant their motion for a preliminary injunction

//

//

//

Dated: January 10, 2023                    Respectfully Submitted,


                                           **MCCUNE LAW GROUP, APC**


                                           */s/ Richard D. McCune*
                                           Richard D. McCune, CA Bar No. 132124
                                           rdm@mccunewright.com
                                           Steven A. Haskins, CA State Bar No. 238865
                                           sah@mccunewright.com
                                           Valerie Savran, CA State Bar No. 334190
                                           vls@mccunewright.com
                                           Richard A. Nervig, CA State Bar No. 226449
                                           ran@mccunewright.com
                                           **MCCUNE LAW GROUP, APC**
                                           3281 East Guasti Road, Suite 100
                                           Ontario, CA 91761
                                           Telephone: (909) 557-1250
                                           Facsimile: (909) 557-1275

                                           Emily J. Kirk, IL Bar No. 6275282*
                                           ejk@mccunewright.com
                                           **MCCUNE LAW GROUP**
                                           231 N. Main Street, Suite 20
                                           Edwardsville, IL 62025
                                           Telephone: (618) 307-6116
                                           Facsimile: (618) 307-6161
                                           *Admitted *Pro Hac Vice*

                                           Attorneys for Plaintiffs

-18-

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing document to be filed on January 10, 2023, with the Clerk of the Court for the United States District Court for the Southern District of California using the Court's electronic filing system, which will send a notice of electronic filing to all attorneys appearing in this matter.

*/s/ Richard D. McCune*
Richard D. McCune

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction
Case No. 3:22-cv-01976-DMS-AGS