**MCGUIREWOODS LLP**
Alicia A. Baiardo SBN #254228
abaiardo@mcguirewoods.com
Jenny Yi SBN #314540
jyi@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA  94111-3821
Telephone:  415.844.9944

Amy Morrissey Turk (*pro hac vice*)
VA SBN #44957
aturk@mcguirewoods.com
101 West Main Street, Suite 9000
Norfolk, VA 23510
Telephone: 757.640.3700

Joel S. Allen *(pro hac vice)*
TX SBN #00795069
jallen@mcguirewoods.com
Paul M. Chappell *(pro hac vice)*
TX SNB # 24097489
pchappell@mcguirewoods.com
2000 McKinney Ave, Suite 1400
Dallas, TX 75201
Telephone: 214.932.6400

[Additional counsel listed on last page]

*Attorneys for Defendants*
*Wells Fargo Bank, N.A. and Wells Fargo & Co.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRIA MOSELY, REJOYCE KEMP, BERENICE CISNEROS, BRUCE PARKER, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO & CO., WELLS FARGO BANK, N.A., and DOES 1 through 5,<br><br>Defendants. | CASE NO. 3:22-cv-01976-DMS-AGS<br><br>The Hon. Dana M. Sabraw<br><br>**DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Courtroom: 13A<br><br>Hearing Date: March 3, 2023<br><br>Complaint Filed: December 13, 2022 |

1.      I am an attorney licensed to practice in the state of California and a member of the law firm of McGuireWoods LLP, counsel for Defendants Wells Fargo Bank, N.A. and Wells Fargo & Co.  I have personal knowledge of the facts set forth herein and if called as a witness could and would testify competently to these facts under oath.

2.      On November 25, 2020, McCune Law Group ("MLG") filed a class action complaint on behalf of Mosanthony Wilson ("Wilson") and all others similarly situated, alleging that Wells Fargo violated the requirements of the Federal Electronic Funds Act ("EFTA"), its implementing regulation at 12 C.F.R. ¶ 1005.1, *et seq.* ("Regulation E") and California Business & Professions Code § 17200, *et seq.* ("California UCL"). *See Wilson v. Wells Fargo & Co.*, Case No. 3:20-cv-02307-RBM-WVG, 2022 WL 4125220, at *1 (S.D. Cal. Sept. 9, 2022).  Wells Fargo moved to compel Wilson's dispute to arbitration on an individual basis, as required by the arbitration agreement between Wilson and Wells Fargo (the "Wilson Motion to Compel"). A true and correct copy of the Wilson Motion to Compel is attached hereto as **Exhibit A**. The Court granted Wells Fargo's motion to compel, and in doing so concluded that the language of the Deposit Account Agreement stating that "any 'disagreement about this Arbitration Agreement's meaning, application or enforcement' must be decided by an arbitrator" showed that the "parties agreed to arbitrate gateway issues of arbitrability." *Wilson v. Wells Fargo & Co.*, No. 20-CV-2307-DMS-WVG, 2021 WL 1853587, at *2-3 (S.D. Cal. May 10, 2021). Thereafter, the case was resolved in arbitration, and the arbitrator found that Wilson did not prove his claims for violation of Regulation E and violation of the California UCL and held that Wells Fargo was the prevailing party in the matter (the "Wilson Final Award").[1]

---

[1] Notably, it took only 314 days from the date MLG filed Wilson's arbitration demand until the Wilson Final Award was entered.

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

A true and correct copy of the Wilson Final Award is attached hereto as **Exhibit B**. The Court confirmed the Wilson Final Award without objection.

3.    As the *Wilson* arbitration was nearing completion, MLG filed arbitration demands against Wells Fargo on behalf of 13 individual claimants ("13 Demands"). Shortly thereafter, on April 13, 2022, MLG began its mass arbitration[2] campaign against Wells Fargo by filing 497 additional arbitration demands against the bank with AAA.  The additional demands (including Plaintiffs' Arbitration Demands) were virtually identical, and included the following, identical statement in the portion of the demand form requiring the claimant to briefly explain the dispute: "Claimant seeks statutory damages and return of overdraft fees collected in violation of

---

[2] A number of law firms have implemented a new strategy in response to class action waivers called "mass arbitration." In "mass arbitrations," a law firm gathers the claims that would have been part of the class action through solicitation efforts and assert them individually in arbitration through usually identical demands on behalf of individuals. *See* 1 Alt. Disp. Resol. § 8:22 (4th ed.). Most arbitration agreements require that defendants pay the majority of the administrative fees—which can result in the defendant having to pay millions of dollars in initial administrative filing fees before any ruling on the merits of the dispute have been litigated, much less resolved. *See, e.g., Uber Tech., Inc., v. Am. Arbitration Ass'n, Inc.*, 2022 WL 1125962, at *31 (N.Y.A.D. 1 Dept.) (No. 655549/21) (discussing AAA's intent to invoice Uber more than $91 million in connection with mass arbitration campaign consisting of 31,560 boilerplate arbitration demands); *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1064 (N.D. Cal. 2020) (discussing AAA's invoice of nearly $12 million in administrative fees to DoorDash in connection with mass arbitration campaign); Mem. of Law in Supp. of Def. Chegg, Inc.'s Mot. for Clarification or Modification of the Court's April 27, 2020 Order at 16-18, *Lyles v. Chegg, Inc.*, No. 1:19-cv-03235-RDB (D. Md. Aug. 4, 2020), ECF No. 26 (discussing AAA's charging over $7 million in filing fees as part of mass arbitration campaign). As a result of this fee structure, there is the potential for abuse where the plaintiff-side law firm attempts to force high-dollar settlements from businesses that have nothing to do with the merits of the alleged claims, but instead are driven by the desire to avoid the costs the defendant must incur to pay for arbitration itself. *See* Br. of the Chamber of Com. of the U.S. as *Amicus Curiae* in Supp. of Defs.-Appellants and Reversal at 9-18, *MacClelland v. Cellco P'ship*, No. 22-16020 (9th Cir. Nov. 28, 2022).

---

Regulation E of the federal Electronic Funds Transfer Act, and for violation of state consumer fraud laws that have also been violated as a result of Respondent's violations of Regulation E." True and correct copies of Plaintiffs' Arbitration Demands are attached hereto as **Exhibits C-F**. (Plaintiff Berenice Cisneros' demand states that his name is "Bernice". The Complaint filed in this matter misspelled Plaintiff Alexandria Mosley's name as Mosely as acknowledged in Dkt. 13-1.) Filed with each demand was an identical "Statement of Claims,"[3] wherein MLG does not specify which state consumer fraud law or statutory section applies to the claimant's arbitration, but states that the "Claimant seeks actual damages, statutory damages, restitution, and all appropriate injunctive relief provided for by applicable state laws." *See id.*

4.     On April 22, 2022, AAA informed MLG and counsel for Wells Fargo via letter (the "April 22nd AAA Letter") that the additional demands would be subject to AAA's Supplementary Rules for Multiple Case Filings (the multiple case filing dispute is referred to herein as the "MCF"). A true and correct copy of the April 22nd AAA Letter is attached hereto as **Exhibit G**. The parties and AAA agreed that the 13 Demands should be treated as part of the MCF as well. On April 25, 2022, MLG sent a letter to AAA wherein it stated that "[a]lthough not filed simultaneously with our recent multi case filing, ***we request that all of these cases be consolidated and otherwise subject to AAA's Supplementary Rules for Multiple Case Filings pursuant to Rule MC-1(c) thereto***" (the "April 25th MLG Letter"). (Emphasis added). A true and correct copy of the April 25th MLG Letter is attached hereto as **Exhibit H**.

---

[3] On September 29, 2022, MLG began to arbitrarily change the statement of claims it files with its clients' demands to include additional claims (for example, a claim based on an authorized positive, settle negative ("APSN") theory). The demands and statement of claims filed by MLG on behalf of the four Plaintiffs in this action, however, only assert a violation of Regulation E. *See* **Exhibits C-F** (Plaintiffs' Arbitration Demands).

---

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

On May 6, 2022, Wells Fargo sent a letter to AAA responding to the April 25th MLG Letter stating that it did not object to the implementation of the Supplementary Rules, but that it expected AAA to abide by the arbitration agreements between the parties (the "May 6th Wells Fargo Letter"). A true and correct copy of the May 6th Wells Fargo Letter is attached hereto as **Exhibit I**.

5.      Since that time, MLG has continued to file individual arbitration demands in tranches even after the filing of the Complaint and Motion for Preliminary Injunction. The total number of individual arbitration demands MLG has filed with AAA against Wells Fargo as of February 1, 2023 is 3,365. AAA confirmed receipt of each tranche of demands to MLG and Wells Fargo and has continued to treat all these filings as part of the MCF subject to the Supplementary Rules. At no point in time prior to the entry of the PA Order did MLG object to AAA's application of the Supplementary Rules.

6.      On July 12, 2022, AAA informed the parties that AAA's Consumer Rules ("Consumer Rules") and Supplementary Rules would apply to the MCF (the "July 12th AAA Letter"). A true and correct copy of the July 12th AAA Letter is attached hereto as **Exhibit J**. On July 29, 2022, AAA confirmed via letter the appointment of the Honorable Anita Rae Shapiro to serve as Process Arbitrator for AAA dispute (the "July 29th AAA Letter"). A true and correct copy of the July 29th AAA Letter is attached hereto as **Exhibit K**. At no point in time in writing or orally did MLG object to AAA's application of the Supplementary Rules to the MCF until the filing of this lawsuit.

7.      After AAA determined the MCF would be governed by the Supplementary Rules, it began invoicing Wells Fargo for the initial administrative filing fees associated with the demands filed by MLG. Thus far, AAA has invoiced Wells Fargo on eight separate occasions (April 22, 2022, May 6, 2022, May 18, 2022, June 23, 2022, July 18, 2022, August 12, 2022, October 7, 2022, and October 26, 2022) for a total amount of $501,075.00 in initial administrative filing fees

(collectively, the "Invoices"). True and correct copies of the Invoices are attached hereto as **Exhibit L**. These fee payments include invoiced fees for Plaintiffs' arbitrations. Wells Fargo has timely paid each of the Invoices, and has no outstanding or unpaid invoices with AAA. A true and correct copy of a February 3, 2023 email from AAA to Wells Fargo confirming that all the Invoices have been paid and that Wells Fargo does not have any outstanding unpaid invoices from AAA is attached hereto as **Exhibit M**.

8.      Soon after MLG began its mass arbitration campaign against Wells Fargo, it became clear to Wells Fargo that MLG was not performing adequate due diligence to confirm that claimants (1) had enrolled in Wells Fargo's Debit Card Overdraft Service ("DCOS") (i.e., the overdraft program that is the focus of the claims in the MCF)—a pre-requisite to bringing their claims; (2) had incurred any overdraft fees subject to Regulation E; or (3) in some cases, even had an account with Wells Fargo. Additionally, along with its clients' arbitration demands, MLG was also submitting an "authorization" form for many claimants purporting to request the release of certain account documents. These authorizations provided the date that the individual retained MLG to represent them in arbitration against Wells Fargo, the claimant's name, address, email, and a place for the claimant to provide their Wells Fargo account number. The authorizations submitted by MLG, however, established MLG's blatant failure to vet its clients' claims. This included, for example, claimants listing their Wells Fargo account numbers as: "i don't have one"; "Idk"; "xxxxxxxxxx"; "XXX…"; "Not giving my account"; "None"; "999999999"; "N/A"; "[claimant's last name]"; "Not sure"; "Blank"; "000000000". True and correct copies of the above-described authorizations are attached hereto as **Exhibit N**.

9.      Further, Wells Fargo's preliminary review of the demands filed by MLG indicated that many claimants never even agreed to participate in DCOS. Indeed, in some cases, Wells Fargo has been unable to find any checking account associated with the claimants. MLG tries to avoid its basic pleading obligations by suggesting

that this information is solely within Wells Fargo's possession. However, whether a claimant has opted into DCOS can be answered by a cursory review of the claimant's bank statement, which specifies if the claimant is enrolled in the service. A true and correct copy of a redacted bank statement is attached hereto as **Exhibit O**. The bank statements further itemize every transaction, including transactions covered by Regulation E which resulted in an overdraft fee. *See id.* Importantly, with the information currently being provided by MLG, Wells Fargo is forced to conduct multiple searches to identify the proper claimant that cost inordinate amounts of time and money, and the results of such searches cannot provide Wells Fargo information with any level of confidence as to its accuracy. This information cannot be outside of MLG's grasp, either—MLG's advertising specifically requests that individuals seeking to qualify as claimants for arbitration against Wells Fargo submit a Wells Fargo bank statement to MLG for review. *See Overdraft Fee Claims Against Wells Fargo*, https://mccunewright.com/overdraft-fee-claims-against-wells-fargo/ (last visited February 3, 2023) ("If you are a Wells Fargo customer who has been victimized by unfair overdraft fees, contact our team to see if you qualify to recover your money. To qualify quickly, submit your most current Wells Fargo bank statement to our team.").

10.     It appears that many claimants found their way to MLG through advertising on MLG's website. MLG's advertising has evolved over time but at one point claimed that "[a]ny Wells Fargo customer who received an overdraft fee within the past 12 months can qualify" to join the mass arbitration campaign against Wells Fargo, and then went on to explain that each arbitration it files forces Wells Fargo to pay "a whopping $4,000.00, not including their attorneys' fees!" Thus, MLG explained, "bringing hundreds of thousands of arbitrations, each resulting in thousands paid by Wells Fargo, means consumers can finally hit one of the world's largest corporations where it hurts." A true and correct copy of a screen capture of MLG's advertising taken on June 30, 2022 is attached hereto as **Exhibit P**. The

advertisement also stated that in June 2022, MLG, while "representing hundreds of clients who have been charged unfair overdraft fees in arbitrations against Wells Fargo," "secured the return of **all overdraft fees charged within the past year plus a $1000.00 penalty** for every client." MLG did not secure any result for any of its clients in arbitration concerning overdraft fees against Wells Fargo in June 2022. Indeed, the only June 2022 arbitration MLG was handling against Wells Fargo related to overdraft fees was the Wilson matter which was decided for Wells Fargo.

11.    MLG's failure to perform due diligence into its clients' claims prior to filing demands on their behalf (along with MLG's expressed intent to "hit" Wells Fargo "where it hurts") caused Wells Fargo, pursuant to AAA's rules, to raise the issue of the insufficiency of information provided in the demands with the Process Arbitrator during an initial conference call on August 24, 2022. Wells Fargo pointed out that MLG's method of procuring clients and filing demands had likely resulted in hundreds of demands being filed on behalf of individuals with no legitimate claims against Wells Fargo, thereby requiring Wells Fargo to pay hundreds of thousands of dollars in nonrefundable filing fees for arbitrations involving individuals who may have never enrolled in the overdraft program at issue, never been assessed an overdraft fee subject to Regulation E during an actionable limitations period, or who may never have even had an account with Wells Fargo.

12.    On the call, the Process Arbitrator recognized the issues being raised by Wells Fargo and questioned whether certain basic information regarding each claimant's individual dispute with Wells Fargo would be helpful to the efficient and economical administration of all claims. In doing so, the Process Arbitrator opined that claimants' current demands could be amended—and future demands be required—to meet the basic information required of a demand which is set forth in the Consumer Rules so that information establishing legitimate claims was provided. MLG requested briefing on the topic, arguing that the Process Arbitrator lacked the

jurisdiction and authority to rule on the issue. The Process Arbitrator granted the briefing request and set a briefing schedule for the parties.

13.     On September 7, 2022, Wells Fargo submitted a memorandum to the Process Arbitrator requesting that she, pursuant to Supplementary Rules MC-6(d)(i), (ii), and (v), enter an order requiring claimants to provide basic information about each dispute prior to proceeding through the arbitration process (the "September 7th Wells Fargo Memo"). A true and correct copy of the September 7th Wells Fargo Memo is attached hereto as **Exhibit Q**. Therein, Wells Fargo explained in detail the issues stemming from MLG's misleading solicitations and failure to conduct due diligence. Wells Fargo also requested that, to protect the integrity of the dispute, MLG be required to supply in each demand: "(a) the Claimant's Wells Fargo checking account number for the account issue, (b) sufficiently pled facts establishing that the Claimant was enrolled in the overdraft service at issue, (c) sufficiently pled facts establishing that the Claimant incurred overdraft fees in connection with transactions covered by Regulation E, (d) identification of the specific state law(s) under which Claimants assert claims (statutory or common law), and (e) …the amount of money in dispute." Wells Fargo also requested that AAA's invoicing of fees and arbitrator compensation related to the demands or arbitrations be stayed until the demands were amended to meet these requirements. The September 7th Wells Fargo Memo provided support in the Consumer and Supplemental Rules for making this request. *See Id.* at §§ II.C, III.B, III.C, III.D).  Wells Fargo did not request, either in its briefing or at a hearing, that the Process Arbitrator impose requirements under California Code of Civil Procedure section 128.7.

14.     MLG filed its response on September 21, 2022 (the "MLG September 21st Response Memo"), and Wells Fargo filed its reply on October 5, 2021 (the "October 5th Wells Fargo Reply Memo"). True and correct copies of the MLG September 21st Response Memo and the October 5th Wells Fargo Reply Memo are attached hereto as **Exhibits R and S**.

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

15.     On October 18, 2022, the Process Arbitrator held an oral argument on the matter. At no time during oral argument or during the briefing of this issue did MLG take the position that the Supplementary Rules did not apply to the MCF. The parties also discussed whether MLG would withdraw any claims in light of a potential order requiring additional information and the Process Arbitrator suggested using a spreadsheet as a simpler method for handling all the claims filed to date.

16.     On October 27, 2022, the Process Arbitrator entered an order regarding Wells Fargo's request (the "PA Order"). A true and correct copy of the PA Order is attached hereto as **Exhibit T**. The PA Order granted in part and denied in part Wells Fargo's request. It then went on to order each claimant to file and serve an amended demand for all claims filed before October 27, 2022—and required all demands filed thereafter to— "specifically plead, 1) each Claimant's Wells Fargo account number for the account at issue, 2) facts to establish each Claimant was enrolled in DCOS during the time period at issue and 3) facts sufficient to establish that each Claimant incurred overdraft fees in connection with transactions covered by Regulation E." *Id.* The PA Order also ordered that an attorney of record for claimants sign each amended claim as required by California Code of Civil Procedure section 128.7 or, in lieu of filing and serving a separate amended claim for each claimant, file one spreadsheet signed by an attorney of record for claimants including all the ordered information for each claimant. *Id.* The PA Order specifically stated that "claimants are not ordered; 1) to file Amended Claims specifying which state laws have been violated or 2) allege the specific amount of overdraft fees each Claimant was wrongly charged." The PA Order also stated that the "invoicing of AAA fees is stayed for all Claims that have not already been invoiced and for all new Claims filed with AAA until the [specificity] requirements [ ] have been satisfied." *Id.* Neither the Process Arbitrator nor AAA has stated that the PA Order requires that ***all*** claimants meet the PA Order's requirements prior to any individual claimant's arbitration moving forward. MLG did not previously raise this with the Process Arbitrator or AAA. Wells Fargo has

consistently stated its intent and willingness to move forward with MLG's clients' individual arbitrations as soon as an individual client files an amended demand meeting the PA Order's requirements. *See, e.g.,* Wells Fargo letter to AAA dated January 4, 2023 (the "January 4th Wells Fargo Letter"). A true and correct copy of the January 4th Wells Fargo Letter is attached hereto as **Exhibit U**.

17.     Shortly after the PA Order was entered, MLG made clear that it would not abide by its terms. In a letter addressed to AAA's President and Chief Executive Office and Senior Vice President, General Counsel, and Corporate Secretary, stated its intention to challenge the arbitration agreement in a federal court filing (the "November 2nd MLG Letter"). A true and correct copy of the November 2nd MLG Letter is attached hereto as **Exhibit V**. MLG then requested that AAA executives "voluntarily stay application of" the PA Order pending its forthcoming federal filing. *See id.*

18.     On November 8, 2022, Wells Fargo responded to MLG's letter by pointing out that the request to stay the PA Order was improper, as the Supplementary Rules explicitly provide the Process Arbitrator exclusive jurisdiction to decide the subject of the PA Order and state that "[r]ulings by the Process Arbitrator will be final and binding upon the parties" (the "November 8th Wells Fargo Letter"). A true and correct copy of the November 8th Wells Fargo Letter is attached hereto as **Exhibit W**. MLG replied to the November 8th Letter by informing AAA that although *its claimants "consent to AAA arbitration pursuant to AAA rules,"* it would move forward with filing claims with AAA that did not abide by the PA Order and would also file an action in federal court (the "November 10th MLG Letter").  A true and correct copy of the November 10th MLG Letter is attached hereto as **Exhibit X**.

19.     On November 15, 2022, AAA sent a letter to the parties addressing MLG's objection to the PA Order (the "November 15th AAA Letter"). A true and correct copy of the November 15th AAA Letter is attached hereto as **Exhibit Y**. Therein, AAA informed the parties that it would not be issuing an invoice for further

---

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

case management fees for any matters until claimants filed and served amended claims as required by the PA Order. *Id.* MLG has continued to file demands on behalf of new claimants that fail to meet the requirements of the PA Order. Accordingly, on November 22, 2022, Wells Fargo wrote to AAA asking it to confirm that, pursuant to the PA Order, no fees would be invoiced until the improperly submitted demands contained the information provided in the PA Order (the "November 22nd Wells Fargo Email"). A true and correct copy of the November 22nd Wells Fargo Email is attached hereto as **Exhibit Z**. AAA responded by requesting that the parties address the issue during a scheduled November 30, 2022 status conference with the Process Arbitrator (the "November 23rd AAA Email"). A true and correct copy of the November 23rd AAA Email is attached hereto as **Exhibit AA**.

20.    At the November 30, 2022 status conference, the Process Arbitrator asked the parties to discuss how compliance with the PA Order was being handled. MLG informed the Process Arbitrator that it had not complied with the PA Order, and stated its intention to challenge the PA Order in a federal district court. MLG also informed the Process Arbitrator and Wells Fargo that it intended to continue to submit new claims that did not meet the requirements of the PA Order. Wells Fargo then reiterated the Process Arbitrator's authority to rule on the matters in the PA Order and that under the Supplementary Rules, rulings by the Process Arbitrator are final and binding. The Process Arbitrator stated that invoicing of fees would be stayed until the PA Order is complied with, and ordered the parties to notify AAA within fifteen days of any order entered by a federal court regarding the matter. On December 1, 2022, the Process Arbitrator entered an order memorializing the status conference (the "December 1st PA Order"). A true and correct copy of the December 1st PA Order is attached hereto as **Exhibit BB**.

21.    On December 8, 2022, Wells Fargo wrote to AAA objecting to MLG's submission of demands on December 7, 2022, which did not meet the PA Order's filing requirements, and requested confirmation that the improperly submitted

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

demands did not warrant imposition of AAA fees (the "December 8th Wells Fargo Letter"). A true and correct copy of the December 8th Wells Fargo Letter is attached hereto as **Exhibit CC**.

22.    On December 9, 2022, MLG wrote AAA asking it to confirm whether all of the demands submitted after the PA Order were deemed filed by AAA (the "December 9th MLG Email"). A true and correct copy of the December 9th MLG Email is attached hereto as **Exhibit DD**. AAA responded on December 13, 2022, stating that given MLG's forthcoming federal filing challenging the PA Order, it would await further direction from the district court as to how the arbitrations should or should not proceed (the "December 13th AAA Email"). A true and correct copy of the December 13th AAA Email is attached hereto as **Exhibit EE**.

23.    On December 13, 2022, MLG filed the Complaint in this matter. The Complaint was filed on behalf of four individuals involved in the MCF and alleges that each Plaintiff was enrolled in Wells Fargo's DCOS and was charged an overdraft fee subject to Regulation E. MLG did not serve the Complaint on AAA.

24.    Plaintiffs have each submitted an arbitration demand against Wells Fargo as part of MLG's mass arbitration campaign (collectively, "Plaintiffs' Arbitration Demands"). *See* **Exhibits C-F** (Plaintiffs' Arbitration Demands). Plaintiffs Alexandra Mosley and Bruce Parker submitted their arbitration demands on April 11, 2022. Plaintiff Rejoyce Kemp submitted her arbitration demand against Wells Fargo on July 19, 2022. Plaintiff Berenice Cisneros submitted his arbitration demand against Wells Fargo on August 12, 2022. Like the other arbitration demands submitted as part of MLG's mass arbitration campaign against Wells Fargo, Plaintiffs' Arbitration Demands are virtually identical, include identical statements when required to briefly explain the dispute, and include virtually identical "Statement of Claims" that do not specify which state consumer fraud law or statutory section applies to Plaintiffs' arbitrations. *See id.* As all of the Plaintiffs' demands were submitted prior to MLG

1  beginning to add APSN claims on September 29, 2022, none of their demands assert
2  a claim based on an APSN theory.

3    25.    On January 4, 2023, AAA reached out to the parties asking for a status
4  update on the federal filing (the "January 4th AAA Email"). A true and correct copy
5  of the January 4th AAA Email is attached hereto as **Exhibit FF**. That same day, Wells
6  Fargo provided a detailed response to AAA and the Process Arbitrator *See* **Exhibit U**
7  (January 4th Wells Fargo Letter). The January 4th Wells Fargo Letter provided a
8  timeline of events since the PA Order was entered, restated the PA Order's
9  requirements, and noted MLG's refusal to comply with the PA Order and its
10 continued submission of non-compliant demands. Wells Fargo then discussed the
11 Complaint and pointed out that the federal filing was only brought on behalf of four
12 individuals. Most notably, Wells Fargo informed AAA that, given the limited scope
13 of the Complaint, Wells Fargo was "prepared to move forward with all claimant
14 arbitrations" other than the Plaintiffs "as soon as those Claimants provide the
15 information required in" the PA Order.  Wells Fargo asked that MLG advise it and
16 AAA if MLG objected to moving forward with arbitrations for other claimants and
17 the grounds for such objection. MLG responded to the January 4th AAA Email by
18 providing the case name and case number of this lawsuit, but did not address the
19 January 4th Wells Fargo Letter or its request related to moving forward with
20 arbitrations for claimants other than the Plaintiffs (the "January 5th MLG Email"). A
21 true and correct copy of the January 5th MLG Email is attached hereto as **Exhibit GG**.
22 On January 13, 2023, AAA reiterated that, in light of the December 1st Order and the
23 litigation between the parties regarding the enforceability of the PA Order, it would
24 / / /
25 / / /
26 / / /
27 / / /
28

wait the further direction from the District Court as to how the arbitrations should or should not procced (the "January 13th AAA Email"). A true and correct copy of the January 13th AAA Email is attached hereto as **Exhibit HH**.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed this 3rd day of February 2023, in San Francisco, California.


                                    By: */s/ Alicia A. Baiardo*
                                         Alicia A. Baiardo

1    Additional Counsel from Title Page:

2    **TROUTMAN PEPPER**
3    **HAMILTON SANDERS LLP**
     Jessica R. Lohr (SBN #302348)
4    jessica.lohr@troutman.com
     11682 El Camino Real, Suite 400
5    San Diego, CA 92130
     Telephone: 858-509-6044
6
     Jason D. Evans (*pro hac vice*)
7    NC SBN #27808
     jason.evans@troutman.com
8    Joshua D. Davey (*pro hac vice*)
     NC  SBN #35246
9    joshua.davey@troutman.com
     301 S. College St., 34th Floor
10   Charlotte, NC 28202
     Telephone: 704-998-4050
11
     *Attorneys for Defendant Wells Fargo Bank, N.A. and Wells Fargo & Co.*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL ARBITRATION

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2023 I electronically filed the foregoing document entitled **DECLARATION OF ALICIA A. BAIARDO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION** with the Clerk of the Court for the United States District Court, Southern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

*/s/ Alicia A. Baiardo*
Alicia A. Baiardo