# Exhibit S

**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| **INDIVIDUAL CONSUMERS V. WELLS FARGO & CO., WELLS FARGO BANK, N.A.** | **WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF REQUEST FOR CLAIMANTS TO PROVIDE BASIC INFORMATION ABOUT EACH DISPUTE PRIOR TO THE DEMAND PROCEEDING THROUGH THE ARBITRATION PROCESS** |

Pursuant to Process Arbitrator Hon. Anita Rae Shapiro's ("Process Arbitrator") request for briefing regarding filing requirements for Claimants' demands made during the August 24, 2022 initial conference call, Wells Fargo Bank, N.A. ("Wells Fargo") submits this Reply (the "Reply") in Support of Request for Claimants to Provide Basic Information About Each Dispute Prior to the Demand Proceeding Through the Arbitration Process (the "Memorandum").

## I. INTRODUCTION

Throughout its Response to the Memorandum (the "Response"), McCune Wright Arevalo, LLP ("McCune") mischaracterizes Wells Fargo's position regarding enforcement of AAA rules governing the filing of demands, ignores Wells Fargo's actions in paying all required filing fees to date, and fails to address in any way the fact that the AAA's Consumer Rules (just like federal rules and the American Bar Association's model rules) require attorneys to perform a reasonable investigation into the facts at issue prior to asserting a claim. Ironically, McCune does not address its complete failure to investigate its clients' claims and absurdly argues that "Wells Fargo waived itself out of protections" by contracting to have AAA administer its disputes. McCune further accuses Wells Fargo of attempting to "evade justice" by requesting that basic information for each

Claimant be pled in a demand prior to millions of dollars in nonrefundable filing fees being expended.

This request by Wells Fargo is not an attempt to "evade justice." Claimants' failure to provide basic information needed to make the dispute clear to the Process Arbitrator and the Respondent has resulted in demands being filed (and fees paid) on behalf of individuals that do not have a legitimate dispute with Wells Fargo—*i.e.*, individuals that do not have a checking account with Wells Fargo, were not enrolled in the Wells Fargo's Debit Card Overdraft Service ("DCOS"), or were not assessed overdraft fees during an actionable limitations period. The integrity of the Multiple Case Filing process mandates that the Process Arbitrator uphold the requirements for filing a demand under applicable AAA rules to ensure (a) Claimants' counsel conducts the required due diligence before bringing a claim; and (b) Wells Fargo receives fair notice of the individual facts, state statutory law, and alleged damages at issue so that it can properly investigate the claims and prepare a defense. Protections should—and do—exist under the AAA Rules.

The AAA's Supplementary Rules for Multiple Case Filings expressly grant the Process Arbitrator authority to make determinations on these issues. Accordingly, to ensure that this Multiple Case Filing Dispute is completed as efficiently and economically as possible, Wells Fargo requests that the Process Arbitrator enter an order requiring Claimants' counsel to amend its previously filed arbitration demands to include (a) the Claimant's Wells Fargo checking account number for the account at issue, (b) sufficiently pled facts establishing that the Claimant was enrolled in the overdraft service at issue, (c) sufficiently pled facts establishing that the Claimant incurred overdraft fees in connection with transactions covered by Regulation E, (d) identification of the specific state law(s) under which Claimants assert claims (statutory or common law), and

(e) specification of the amount of money in dispute. Wells Fargo also requests that the Process Arbitrator order that any future demands filed by Claimants' counsel provide that same basic information and that the AAA's invoicing of fees and arbitrator compensation related to the demands or arbitrations be stayed until the underlying demands meet such requirements.

## II.   ARGUMENT & AUTHORITIES

**A.   McCune wholly ignores its obligation to conduct a reasonable investigation before asserting a claim.**

As discussed in detail in the Memorandum, federal courts, the American Bar Association ("ABA"), and the AAA have all recognized the necessity for attorneys to perform a reasonable investigation into the facts at issue prior to asserting a claim. *See* Memorandum at § III.A. These rules have been implemented with the purpose of deterring baseless filings and streamlining the administration and procedures of disputes. And, the AAA's Consumer Rules ("Consumer Rules"), specifically prohibit frivolous filings, similar to Fed. R. Civ. P. 11 and in step with the ABA's model rule that permits an arbitrator to allocate compensation, expenses, costs of arbitration, and administrative fees to a respondent if the arbitrator determines that a claim was filed for the purposes of harassment or is patently frivolous. *See* Consumer Rules at 44(c).

McCune failed to address this issue in detail, instead merely asserting in the introduction that Wells Fargo's "allegations regarding [McCune] are false."[1] Notably, McCune does not even attempt to provide facts establishing that it is conducting a reasonable—or ***any***—investigation into its clients claims.[2] Nor could it. McCune has made clear in its advertising that its purpose in

---

[1] Oddly, McCune claims that Wells Fargo has a grudge against it based on an unrelated case that was resolved nearly a decade ago. None of the attorneys defending Wells Fargo in this dispute, however, were involved in that case.

[2] On the contrary, McCune attempts to get around its obligation by arguing that requiring this basic information is not warranted because Wells Fargo "already has all the information it pretextually demands from consumers" and Claimants have already requested information related to their claims. *See* Response at 8. Thus, according to Claimants, requiring them to meet the basic requirements of the Consumer Rules would run contrary to Consumer Due Process Protocol 13, which provides that no party should be denied a "fundamentally-fair process due to an inability to obtain information material to a dispute." *Id.* But this argument does not make sense in the context of this dispute. Indeed, as

Page **3** of **11**

bringing these claims is to harm Wells Fargo, and that to achieve its purpose McCune plans to file as many demands as possible, regardless of whether its clients signed up for a checking account with Wells Fargo, agreed to participate in DCOS, or have been assessed an overdraft fee during an actionable limitations period. *See* Memorandum at § III.B, Exhibit L (the "June 30th McCune Advertisement Capture").

McCune attempts to avoid the statements made in its advertising by claiming that the relevant advertisement was "not made available to the public but resulted from a short-lived mistake." *See* Response at § III. Not only is this claim false,[3] it is also immaterial. Regardless of whether McCune meant to advertise its intended purpose of harming Wells Fargo, the statements made by McCune in the June 30th McCune Advertisement Capture show intent and clearly evidence a willingness to use anyone—regardless of whether the individual ever even banked with Wells Fargo—to "hit [Wells Fargo] where it hurts" by filing "hundreds of thousands of arbitrations" and thereby forcing Wells Fargo to pay a "whopping" amount of arbitration fees and costs. *See* Memorandum at § III.B. It is imperative that the Process Arbitrator performs her gate-keeping role to ensure each demand contains the basic information needed to satisfy a demand under the Consumer Rules to protect the integrity of the Multiple Case filing process and ensure that the process is used for its intended purposes—and not as a strategy to punish, harm, harass, or

---

discussed in detail in the Memorandum, McCune's actions (and failures to act) have resulted in McCune filing demands on behalf of individuals that have never banked with Wells Fargo. For these Claimants, there would be no records in Wells Fargo's possession. The Process Arbitrator should ignore McCune's request to require Wells Fargo to spend valuable time and resources looking for information that may not exist simply because McCune refuses to fulfill its obligation to investigate its clients' claims.

[3] McCune further claims that the advertisement was not "live for long enough to register on Google searches," and that the advertisement could not have been seen without "having a direct link to it." *See* Response at 11. In support of these statements, McCune attaches the Declaration of Devin Texeira (the "Texeira Declaration"). The Texeira Declaration not only fails to provide any foundation supporting his statements, but his statements are also false. On June 30, 2022, an employee of Wells Fargo performed a simple Google search for "mccune wright wells fargo," which directed it to the June 30th McCune Advertisement Capture. Moreover, the link was not only available on June 30, as Wells Fargo captured another image from McCune's website on July 5, 2022 that included McCune's language stating its intention to harm Wells Fargo (the "July 5th McCune Advertisement Capture"). A true and correct copy of the July 5th McCune Advertisement Capture is attached hereto as **Exhibit A**.

leverage settlement.

**B.      Claimants' argument that Wells Fargo is attempting to avoid paying arbitration fees and make arbitration less efficient is simply untrue.**

Claimants argue that Wells Fargo is attempting to avoid paying arbitration fees for an arbitration process it signed up for. *See* Response at 3. Additionally, Claimants argue that Wells Fargo's request that they provide basic information with their demands "run[s] counter to every representation it makes regarding the efficiency and economy of the arbitration process." *See id.* Neither of these arguments has merit.

First, Wells Fargo has every intention of utilizing the arbitration process it contracted for and paying fees associated with this process. In fact, Wells Fargo has timely paid a total of $437,325.00 in initial administrative filing fees thus far. Any allegation that Wells Fargo is refusing to or attempting to avoid paying duly-assessed fees for this Multiple Case Filing dispute is patently false. Wells Fargo is simply asking that AAA pleading requirements relative to the contents of a demand be enforced before it is invoiced for further initial administrative filing fees. In other words, Wells Fargo is absolutely willing to honor its commitments in participating in the AAA Consumer Arbitration Program, it just asks that AAA rules be applied fairly to both parties.

Second, Wells Fargo is not, as Claimants argue, attempting to make the arbitration process less efficient or less economical. On the contrary, Wells Fargo's request that Claimants provide basic information required by the Consumer Rules in their demands is specifically designed to make this Multiple Case Filing dispute more efficient and economical. Requiring Claimants to provide the basic information requested makes the process more efficient because (a) it puts both parties and the arbitrator on notice of what is actually in dispute, which law(s) are implicated and the alleged damages, (b) saves Claimants money by avoiding their payment of initial filing fees for claims that are innately not viable because Claimants either do not have an account with Wells

Fargo, never enrolled in DCOS, or never incurred the type of overdraft fee at issue, (c) ensures that Wells Fargo is only charged fees for demands filed by Claimants that have a plausible dispute, and (d) avoids wasting the parties' time and resources. Accordingly, Claimants' arguments that Wells Fargo is attempting to make this Multiple Case Filing process less efficient and economical lack merit and should be ignored.

C.  **Claimants ignore the purpose of the Process Arbitrator and her express authority to make determinations to address the issues stemming from this Multiple Case Filings dispute.**

Claimants fail to acknowledge that this dispute is governed by the Supplementary Rules for Multiple Case Filings (the "Supplementary Rules"). First, Claimants argue that because the Process Arbitrator is appointed after a claim is "accepted" by the AAA, she does not have authority to make determinations regarding whether Claimants have met the AAA's filing requirements. *See* Response at 4. Second, Claimants argue that Wells Fargo "is asking AAA to install a gatekeeper to the process that simply does not exist anywhere in the rules." *See* Response at 8. These arguments directly contradict the express language and the intended purpose of the Supplementary Rules.

Indeed, the Supplementary Rules contemplate the appointment of a "gatekeeper" (Process Arbitrator) to handle the very types of administrative issues presented here. Specifically, the Supplementary Rules provide that the AAA will appoint a Process Arbitrator "to hear and determine the administrative issue(s)." *See id.* at MC-6(b). The Supplementary Rules go on to states that the Process Arbitrator has authority to make decisions regarding "AAA filing requirements," the payment of administrative fees and arbitrator compensation, and "any other administrative issue arising out of the nature of the Multiple Case Filings." *See* Memorandum, Exhibit E ("Supplementary Rules") at MC-6(d)(i), (ii), (v).

**D.     Claimants ignore the demand requirements set forth in the Consumer Rules in an attempt to avoid their obligation to provide basic information for each Claimant Demand.**

Claimants use the majority of their brief to inaccurately characterize Wells Fargo's argument as an attempt to include additional filing requirements under the Consumer Rules. To be clear, Wells Fargo is not asking for any change to the Consumer Rules. Rather, Wells Fargo is merely asking the Process Arbitrator to enforce the Consumer Rules by requiring Claimants to satisfy the requirements for filing a demand. As discussed in detail in the Memorandum, to start an arbitration under the Consumer Rules, Claimants must file a demand that provides "basic information about the dispute," including, at a minimum, the specific amount of money in dispute, a description of the dispute, and the specific laws or statutory sections at issue sufficient to make the individual factual and legal issues clear to Wells Fargo and the arbitrator. *See* Memorandum at § II.C (citing Consumer Rules at R-2(a)(1), R-2(f), and Glossary of Terms).

Claimants spend a full page of their Response discussing the fact that courts have recognized that the pleading requirements for arbitration demands are not as stringent as the requirements under the federal rules. *See* Response at 5. But nowhere in Wells Fargo's Memorandum did it argue that Claimants were required to meet the requirements under the federal rules.[4] Claimants' repeated effort to address arguments that Wells Fargo never made is nothing more than an attempted distraction from McCune's failure to properly investigate its clients' claims and, as a result, McCune's inability to provide the basic information required under the Consumer Rules.

---

[4] Similarly, Claimants use another full page of their Response to argue that Wells Fargo attempted to impose an additional pleading requirement on Claimants based on "the phrase 'lawful demand,' found in the arbitration agreement." Response at 6. But this is not Wells Fargo's point. Rather, Wells Fargo merely seeks to require Claimants to submit "lawful demand[s] ***under the Consumer Rules***," and referenced in a footnote that the Arbitration Agreement had a similar requirement. *See* Memorandum at 8, n.13 (emphasis added).

Claimants further argue that the Consumer Rules' definition of "Demand" is a "generalized description" and therefore—despite its plain terms—does not require them to provide "basic information" after all. Response at 7. But this argument directly contradicts basic principles of interpretation. which hold that when a definition is provided, it is presumed to be the "exclusive definition" of the word.[5] *See, e.g., Colautti v. Franklin*, 439 U.S. 379, 392 (1979). In other words, the definition of "Demand" in the Consumer Rules does not merely apply to how the Process Arbitrator's evaluation of AAA's requirements—it is paramount. The Process Arbitrator cannot interpret Consumer Rule 2 without incorporating the definition of "Demand" into her analysis, and any argument otherwise defies logic.[6]

Claimants' attempts to reframe Wells Fargo's arguments are not persuasive. Wells Fargo is simply requesting that Claimants provide the basic information required under Rule 2 of the Consumer Rules—basic information that McCune should have requested and obtained during an investigation into its clients' claims. Claimants should not be permitted to avoid filing requirements simply because their counsel did not or will not appropriately investigate their claims.

**E.     Even if the Process Arbitrator determines that Claimants have met the Consumer Rule's filing requirements (they have not), she should exercise her authority under the Supplementary Rules to require that Claimants provide additional information.**

As discussed in Section II.C above, the Process Arbitrator has the express authority to make

---

[5] Claimants argue that the definition should be ignored because "the actual rule trumps commentary about the rule." *See* Response at 7. Not only is this argument irrelevant because there is no statute to interpret, but Claimants both mischaracterize the Consumer Rules and misstate basic statutory interpretation. First, Wells Fargo is discussing the definition of "Demand," not "commentary about the rule." Second, statutory interpretations make clear that "when a definition is provided, it is presumed to be the "exclusive definition" of the word. *See, e.g., Colautti v. Franklin*, 439 U.S. 379, 392 (1979). Thus, the definition of a word in a statute cannot be "trumped."

[6] Claimants also argue that requiring them to provide the basic information requested in the Memorandum would "require Claimant to proffer its legal strategies before the arbitration." Response at 8. Wells Fargo is unsure as to how providing basic information establishing a dispute and providing Wells Fargo with information necessary to put Wells Fargo on proper notice so it can properly investigate the claims and prepare a defense requires Claimants to "proffer [their] legal strategies."

Page **8** of **11**

determinations related to filing requirements or "any other administrative issue arising out of the nature of the Multiple Case Filings." *See* Supplementary Rules at MC-6(i)(v). McCune has now filed 2,513 (and counting) identical demands for arbitrations without providing basic information relevant to each individual Claimants' dispute. Each demand fails to specifically state whether Claimants have a checking account with Wells Fargo, agreed to participate in Wells Fargo's DCOS, or were assessed an overdraft fee pursuant to DCOS during an actionable limitations period (let alone the amount of money in dispute). Without this basic information, Wells Fargo cannot properly defend against a Claimants' claim, nor will the dispute be clear to the merit arbitrator. The Consumer Rules set forth requirements for demands to avoid these exact types of harassing, frivolous filings, and Claimants have failed to meet such requirements. But even if the Process Arbitrator determines that Claimants have somehow met the filing requirements under the Consumer Rules—which they have not—the Process Arbitrator still has the authority to require that Claimants provide additional information necessary due to "the nature of the Multiple Case Filings."

Indeed, the Supplementary Rules were created specifically to handle situations unique to Multiple Case Filings. This is one of those situations. To ensure that these Multiple Case Filing disputes are administered efficiently and economically, and to protect the integrity of the process itself, the Process Arbitrator should enter an order requiring McCune to, by a certain specified date, amend the demands currently filed with the AAA to include, and ensure that any future demands include, the additional following information: (a) the Claimant's Wells Fargo checking account number for the account at issue, (b) sufficiently pled facts establishing that the Claimant was enrolled in DCOS, (c) sufficiently pled facts establishing that the Claimant incurred overdraft fees in connection with transactions covered by Regulation E, (d) identification of the specific

state law(s) under which Claimants assert claims (statutory and common law), and (e) the amount of money in dispute.

### III.     CONCLUSION

For the foregoing reasons, Wells Fargo respectfully requests that the Process Arbitrator enter an order: (i) requiring McCune to amend its previously filed arbitration demands to provide the basic information outlined above; (ii) requiring that all future demands filed by McCune provide the basic information outlined above; and (iii) staying the AAA's invoicing of fees and arbitrator compensation related to the demands or arbitrations until the underlying demands meet these specificity requirements (applicable to both current and future filings).

/s/ Alicia A. Baiardo
Alicia A. Baiardo
MCGUIREWOODS LLP
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111
Tel: 415.844.1973
abaiardo@mcguirewoods.com

Amy M. Turk
MCGUIREWOODS LLP
World Trade Center
101 West Main Street
Suite 9000
Norfolk, VA 23510
Tel: 757.640.3711
aturk@mcguirewoods.com

Joel S. Allen
MCGUIREWOODS LLP
2000 McKinney Avenue
Suite 1400
Dallas, TX 75201
Tel: 214.932.6464
jallen@mcguirewoods.com

Joshua D. Davey
William C. Mayberry
Jason D. Evans
Michael C. Peretz
Mary K. Grob
Jacob R. Franchek
TROUTMAN PEPPER HAMILTON SANDERS LLP
301 S. College St., Ste. 3400
Charlotte, NC 28202
Tel: 704.916.1503
joshua.davey@troutman.com
bill.mayberry@troutman.com
Jason.Evans@troutman.com
michael.peretz@troutman.com
mary.grob@troutman.com
jacob.franchek@troutman.com

*Counsel for Defendant Wells Fargo Bank, N.A.*

# Exhibit A



# MWA Accepting 100,000 New Arbitrations Against Wells Fargo

## National law firm successfully secured more than $1,000 per client in Wells Fargo overdraft arbitrations

Wells Fargo thinks they can avoid legal ramifications for abusive overdraft practices by forcing arbitrations. McCune Wright Arevalo, LLP, is here to show them they're dead wrong. MWA has won in hundreds of arbitrations against Wells Fargo over unfair overdraft fees. Each successful arbitration secured the return of the client's fees as well as $1,000.00 in penalties. None of these awards went to attorneys' fees. Now, MWA is ready for more, taking on 100,000 new arbitrations against Wells Fargo. Any Wells Fargo customer who received an overdraft fee within the past 12 months can qualify. Ready to join MWA in the fight against financial injustice? Complete to form today become one of the 100,000 arbitrations bringing the fight to Wells Fargo.

JOIN THE FIGHT >            CHAT WITH US >

### Are you ready to bring arbitrations against Wells Fargo for unfair overdraft fees?

First Name

Last Name

Phone

Email



We use cookies on our website to give you the most relevant experience by remembering your preferences and repeat visits. By clicking "Accept All", you consent to the use of ALL the cookies. However, you may visit "Cookie Settings" to provide a controlled consent.

Cookie Settings      Accept All



## Justice/Injustice Placeholder



McCune Wright Arevalo, LLP – Fighting Back Against Illegal and Unfair Ban…

## ATTORNEY ADVERTISING

McCune Wright Arevalo, LLP, is responsible for this solicitation. The information provided on this website is for general information purposes only. The information you obtain is not, nor is it intended to be, legal advice. Use of this website or submission of the online form does not create an attorney-client relationship.

Counsel Richard McCune is licensed to practice only in the state of California.  The law firm of McCune Wright Arevalo, LLP, has attorneys licensed to practice law in AZ, CA, IL, MO, NJ, NY and PA.  This information section is not intended to be a solicitation for services in states where it is forbidden for non-barred attorneys from advertising for services, and McCune Wright Arevalo, LLP, does not have attorneys barred in that state. McCune Wright Arevalo, LLP, is a national firm that brings lawsuits in a majority of the states. In states where one of its attorneys are not barred, it does so by filing the complaint along with local counsel barred in that state.

The results discussed do not guarantee, warrant, or predict the results in future cases.

We use cookies on our website to give you the most relevant experience by remembering your preferences and repeat visits. By clicking "Accept All", you consent to the use of ALL the cookies. However, you may visit "Cookie Settings" to provide a controlled consent.

Cookie Settings        Accept All



## Injustice: Welcome to Wells Fargo

McCune Wright Arevalo, LLP, (MWA) is fighting back against Wells Fargo's predatory overdraft practices that unjustly punish customers living paycheck-to-paycheck. Although Wells Fargo thought they'd get away with slimy, pocket-lining policies by implementing arbitration-only clauses in their account agreements that forbid consumers from bringing class actions, MWA won't let them hide from justice.

In June 2022, MWA – representing hundreds of clients who have been charged unfair overdraft fees in arbitrations against Wells Fargo – secured the return of **all overdraft fees charged within the past year plus a $1000.00 penalty** for every client. * The best part? All of that money went right into our clients' pockets with no charges for attorney's fees. And this is only the beginning.

*Results not guaranteed for all clients.

**HOLD WELLS FARGO ACCOUNTABLE** ›

## Contact MWA to Learn if You Qualify!

### MWA is Ready to Represent You.

We're committed to taking on 100,000 new clients in their overdraft arbitrations against Wells Fargo. You may qualify to join the movement towards justice if:

- You've been charged an overdraft fee on an ATM or debit card purchase in the past 12 months.
- You have an active Wells Fargo account.

That's it. That's all you need to take your money back from a corporation well-known for using underhanded tactics to boost their bottom line and increase bonuses for executives at the top.

We use cookies on our website to give you the most relevant experience by remembering your preferences and repeat visits. By clicking "Accept All", you consent to the use of ALL the cookies. However, you may visit "Cookie Settings" to provide a controlled consent.

Cookie Settings    Accept All



this corporation will only listen to its wallet.

Here's how MWA is attaining justice out of Wells Fargo's injustice beyond securing overdraft fees for our clients. Arbitrations brought by the consumer costs only $50.00 paid by the attorney while Wells Fargo pays a whopping $4,000.00, not including their attorneys' fees! In short, bringing hundreds of thousands of arbitrations, each resulting in thousands paid by Wells Fargo, means consumers can finally hit one of the world's largest corporations where it hurts. Each of these thousands of arbitrations matters in holding Wells Fargo accountable.

**RECLAIM WHAT'S YOURS** >

## Featured On









## About Us

McCune Wright Arevalo, LLP, (MWA) has a long history of success holding banks and credit unions accountable for their unfair or illegal practices, including a $203 million verdict against Wells Fargo itself. The Financial Services attorneys of MWA believe big banks should never be able to just take their customers' hard-earned money when they are not legally entitled to collect overdraft fees.

We use cookies on our website to give you the most relevant experience by remembering your preferences and repeat visits. By clicking "Accept All", you consent to the use of ALL the cookies. However, you may visit "Cookie Settings" to provide a controlled consent.

Cookie Settings    Accept All





| HOME | CASES | CONTACT US | PRIVACY POLICY |

  in

### Main Office:
(602) 926-7797
3281 East Guasti Road Suite 100
Ontario, CA 91761

### Inland Empire – East Office:
(909) 443-1643
164 W. Hospitality Lane Suite 109
San Bernardino, CA 92408

### Midwest Office:
(618) 424-4402
231 North Main Street Suite 20
Edwardsville, IL 62025

### Orange County Office:
(714) 909-2326
18565 Jamboree Road Suite 550
Irvine, CA 92612

### Coachella Valley Office:
(760) 892-5099
73255 El Paseo Suite 10
Palm Desert, CA 92260

### East Coast Office:
(973) 737-9981
One Gateway Center Suite 1500
Newark, NJ 07102

© 2022 McCune Wright Arevalo, LLP

The information on this website is for general information purposes only. Nothing on this site should be taken as legal advice for any individual case or situation. This information is not intended to create, and receipt or viewing does not constitute, an attorney-client relationship.

We use cookies on our website to give you the most relevant experience by remembering your preferences and repeat visits. By clicking "Accept All", you consent to the use of ALL the cookies. However, you may visit "Cookie Settings" to provide a controlled consent.

Cookie Settings    Accept All