UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRIA MOSLEY, REJOYCE KEMP, BERENICE CISNEROS, BRUCE PARKER, individually,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & CO., WELLS FARGO BANK, N.A., and DOES 1 through 5,<br><br>Defendants. | Case No.: 22-cv-01976-DMS-AGS<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION, AND DENYING AS MOOT PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

This case comes before the Court on competing motions: Plaintiffs' motion for preliminary injunction, (ECF No. 13), and Defendants' (collectively "Wells Fargo") motion to compel arbitration. (ECF No. 21.) These matters are fully briefed and submitted. For the following reasons, the Court grants Defendants' motion to compel arbitration, denies as moot Plaintiffs' motion for preliminary injunction, and dismisses this case without prejudice.

## I.

## BACKGROUND AND FACTS

Plaintiffs Alexandria Mosley, Rejoyce Kemp, Berenice Cisneros, and Bruce Parker all have, or had at one point, a Wells Fargo checking account ("Account"). (ECF No. 1,

Compl. ¶¶ 16-19.) Each Plaintiff was enrolled in an optional overdraft program, Debit Card Overdraft Service ("DCOS"), offered by Wells Fargo for debit card and ATM transactions. (*Id.* ¶¶ 16-19, 70-73.) When each Plaintiff became a consumer of Wells Fargo, they received and agreed to be bound by Wells Fargo's Deposit Account Agreement ("Account Agreement"). (*Id.* ¶ 1.)[1] The Account Agreement governs the relationship between Plaintiffs and Wells Fargo, and contains provisions requiring arbitration of disputes between the parties ("Arbitration Agreement"). (Def. Mot. at 3 (ECF No. 21-1.))

In accordance with the Arbitration Agreement, Plaintiffs filed arbitration demands with AAA. (ECF No. 13-1 at 3.) The arbitration demands "seek statutory damages and return of overdraft fees collected in violation of Regulation E" and "state consumer fraud laws" that have also been "violated as a result of [Wells Fargo's] violations of Regulation E." (Declaration of Alicia Baiardo ISO Defendant's Motion to Compel Arbitration ("Baiardo Decl.") ¶ 3, Exs. C-F (ECF No. 22.)) The law firm McCune Law Group, APC ("MLG") filed the arbitration demands on behalf of Plaintiffs. (Pl. Oppo. at 9.) MLG also filed nearly identical demands for more than 3,300 additional Wells Fargo consumers. (*Id.* at 10.) As a result, AAA informed MLG and Wells Fargo that the claims would be subject to AAA's Supplementary Rules for Multiple Case Filings ("MCF"). (Baiardo Decl. ¶ 4, Ex. G.) MLG requested that certain demands filed against Wells Fargo "be consolidated and otherwise subject to AAA's Supplementary Rules for Multiple Case Filings." (*Id.*) AAA then informed the parties that AAA's Consumer Rules ("Consumer Rules") and Supplementary Rules would apply to the arbitration demands filed by MLG, and appointed the Honorable Anita Rae Shapiro as Process Arbitrator ("PA Shapiro") for the MCF proceedings. (*Id.* ¶ 6, Exs. J and K.)

---

[1] It is undisputed the Arbitration Agreement for Plaintiffs Mosely, Cisneros, and Parker is contained in the October 15, 2021 Account Agreement, and the Arbitration Agreement for Plaintiff Kemp is contained in the May 9, 2022 Account Agreement. The parties agree the Arbitration Agreements are identical. (*See* ECF No. 21-1 at 10 n.1; ECF No. 25 at 9.)

As of February 3, 2023, MLG had filed 3,365 arbitration demands in the MCF on behalf of Wells Fargo consumers. (Def. Mot. at 6 (ECF No. 21-1.))  After reviewing many of these demands, Wells Fargo felt "MLG was not performing reasonable due diligence to confirm that claimants were (1) Wells Fargo customers, (2) had enrolled in DCOS (a prerequisite to bringing their claims) or (3) had incurred any overdraft fees subject to Regulation E." (*Id.* at 7.)  As a result, Wells Fargo brought a motion in the arbitration forum pursuant to Supplementary Rule MC-6 (which provides the PA authority to determine filing requirements in MCF proceedings) and asked PA Shapiro to require MLG "to provide the requisite basic information in the demands it was filing." (*Id.* at 8.)[2]  On October 27, 2022, PA Shapiro issued an Order granting in part and denying in part Defendants' request ("PA Order"). (Baiardo Decl. ¶16, Ex. T.)  Specifically, the PA Order required all demands to "plead, 1) each Claimant's Wells Fargo account number for the account at issue, 2) facts to establish each Claimant was enrolled in DCOS during the time period at issue[,] and 3) facts sufficient to establish that each Claimant incurred overdraft fees in connection with transactions covered by Regulation E." (*Id.*)

MLG informed AAA and Wells Fargo it objected to the PA Order, planned to challenge the PA Order in federal court, advised that MLG would continue to file claims as it had, and requested AAA to stay the proceedings. (*Id.* ¶ 17, Ex. V.)  Wells Fargo argued the PA Order was proper and AAA lacked authority to stay the proceedings. (*Id.* ¶ 18, Ex. W.)  AAA declined to withdraw the PA Order and stay proceedings absent agreement by the parties or an order from the court. (*Id.* ¶ 19, Ex. Y.)

Plaintiffs, who are four of the claimants represented by MLG in the MCF proceedings, filed this lawsuit on December 13, 2022. (*See* Compl. (ECF No. 1.))  Plaintiffs first cause of action alleges Defendants breached the Account Agreement by

---

[2] Wells Fargo cites "authorization" form responses submitted on behalf of claimants, which failed to identify basic information such as customer account numbers: "i don't have one"; "Idk"; "xxxxxxxxxx"; "XXX…"; "Not giving my account"; "None"; "999999999"; "N/a"; "[claimant's last name]"; "Not sure"; "Blank"; "000000000." (Def. Mot. at 6.)

3

refusing to pay arbitration fees and prevented Plaintiffs' arbitration claims from going forward. (*Id.* ¶¶ 83-91.) Plaintiffs ask the Court to "enter declaratory judgment declaring that Wells Fargo has breached its arbitration agreement with Plaintiffs, and Plaintiffs are thus no longer bound by the agreement[,]" (*Id.* ¶ 90), and to "issue appropriate injunctive relief staying or terminating the current arbitration proceedings." (*Id.* ¶ 91.) Plaintiffs' second cause of action alleges Defendants violated Regulation E's "Opt In Rule," 12 C.F.R. §§ 1005, *et seq.*, and seeks "declaratory judgment that (1) Wells Fargo violated Regulation E by failing to obtain Plaintiffs' lawful consent before enrolling them in DCOS and (2), as a result, Wells Fargo unlawfully charged Plaintiffs overdraft fees on ATM and one-time debit card transactions." (*Id.* ¶ 101.) Plaintiffs third cause of action alleges Defendants violated California's Unfair Competition Law ("UCL") by violating Regulation E. (*Id.* ¶¶ 103-11.) Accordingly, Plaintiffs ask the Court to "award equitable relief . . . in the form of injunctive relief preventing Wells Fargo from (i) enforcing its arbitration agreement with Plaintiffs and other current customers unable to obtain arbitration hearings because of Wells Fargo's obstruction; (ii) offering the arbitration agreement to those who are not yet customers, but will open accounts in the future; and (iii) charging overdraft fees to Plaintiffs and other customers on Regulation E transactions until Wells Fargo has obtained affirmative consent through an overdraft disclosure and practices that are consistent with Regulation E." (*Id.* ¶ 111.)

## II.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the enforcement of arbitration agreements involving interstate commerce. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). "The FAA 'leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to

which an arbitration has been signed.'" *Kilgore v. KeyBank, Nat. Ass'n.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).  Accordingly, the Court's role under the FAA is to determine "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If both factors are met, the Court must enforce the arbitration agreement according to its terms.  The burden of proving claims are not suitable for arbitration is on the party resisting arbitration.  *Green Tree Fin. Corp-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).  Under the FAA, "any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

## III.
## DISCUSSION

As noted, in deciding whether to compel arbitration, a district court must determine two gateway issues: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  "However, these gateway issues can be expressly delegated to the arbitrator where 'the parties clearly and unmistakably provide otherwise.'" *Id.* (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

**A.  Delegation of Gateway Issues**

"[L]anguage 'delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause [ ] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)); *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as . . . whether their agreement covers a particular controversy.").  Where the parties have "clearly

5

and unmistakably" delegated such gateway issues to the arbitrator, the validity of the arbitration agreement is a question for the arbitrator to decide, rather than the court. *AT & T Techs.*, 475 U.S. at 649. While "there is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).

Wells Fargo contends the Arbitration Agreement delegates arbitrability of Plaintiffs' claims in the present action to arbitration. Wells Fargo points out that this Court has already determined that a nearly identical arbitration provision delegates arbitrability to arbitration, *see Wilson v. Wells Fargo & Co.*, No. 20-cv-02307, 2022 WL 4125220 (S.D. Cal. Sept. 9, 2022), and that Plaintiffs affirmatively acceded to AAA's authority by submitting their demands. *See Nghiem v. NEC Electronic, Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994), *cert. denied,* 513 U.S. 1044 (1994) ("[o]nce a claimant submits to the authority of the arbitrator and pursues arbitration, he cannot suddenly change his mind and assert lack of authority.")

The Arbitration Agreement states AAA "will hear the dispute between Wells Fargo and you," and defines "dispute" as "any unresolved disagreement between Wells Fargo and you." (Arbitration Agreement, ECF No. 22-1 at 35.) A "dispute" also "include[s] a disagreement about this Arbitration Agreement's meaning, application, or enforcement." (*Id.*) It further states: "If this Arbitration Agreement is in dispute, the arbitrator will decide whether it is enforceable." (*Id.*) (Pl. Oppo. at 9 (ECF No. 25.)) These provisions "clearly and unmistakably" delegate gateway issues of arbitrability to the arbitrator.

Plaintiffs nevertheless argue the relief they seek falls within a carve-out provision of the Arbitration Agreement, which permits "provisional or ancillary remedies such as injunctive relief." (*Id.*) However, such relief is only permitted "on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process." *Toyo Tire Holdings of Ams., Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010). That is not the case here.

Plaintiffs seek a "total stay of arbitration proceedings pending a hearing on whether Defendants have violated their arbitration agreements with Plaintiffs." (Pl. Mot. for Prelim. Inj. at 1 (ECF No. 13-1.)) This request invites the Court to provide relief sought in Plaintiffs' second and third causes of action. (*See* Compl. ¶¶ 92-111.) In their second cause of action, Plaintiffs ask the Court to issue a declaratory judgment that Wells Fargo violated Regulation E. (*Id.* ¶¶ 92-102.) This request for relief is neither provisional nor ancillary; rather, the request goes directly to the merits of a dispute already submitted to arbitration. The third cause of action fares no better. It asks the Court to enjoin Wells Fargo from enforcing its Arbitration Agreement and charging overdraft fees to Plaintiffs and other customers. (*Id.* ¶¶ 103-111.) To provide such relief, the Court would have to determine the merits of the dispute that Plaintiffs have already submitted to arbitration. Once a party demands arbitration, as here, the party has submitted to the authority of the arbitral tribunal. *Nghiem*, 25 F.3d at 1440. A party "cannot await the outcome and, after an unfavorable decision, challenge the authority of the arbitrators" to issue such decisions. *PowerAgent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1192 (9th Cir. 2004). Accordingly, Plaintiffs cannot now seek to have the entirety of their dispute resolved by this Court. These matters have been submitted to arbitration and are properly before that tribunal.

### B. The PA Order: Final and Binding, or Procedural and not Reviewable?

An arbitration award is generally subject to judicial review only when it is final and binding. *Millmen Local 550, United Broth. of Carpenters and Joiners of Am., AFL-CIO v. Wells Exterior Trim*, 828 F. 2d 1373, 1375 (9th Cir. 1987). The parties dispute whether the PA Order is "final and binding," and thus subject to judicial review. Plaintiffs believe the PA Order is "final and binding" because the AAA rules state the PA's decisions "will be final and binding upon the parties and Merit Arbitrator," and it "directly impacts Plaintiffs' rights to arbitrate their claims." (Pl. Oppo at 14 (ECF No. 25.)) In support, Plaintiffs rely on *Southern Seas Navigation Ltd. of Monrovia v. Petroleos Mexicanos of Mexico City*, 606 F.Supp. 692 (S.D.N.Y. 1985). In *Southern Seas*, the parties entered

arbitration pursuant to their contract, and submitted among other issues to the arbitrator a claim for equitable relief removing a Notice of Claim of Lien. *Id.* at 693. The arbitrator issued an "interim" award, and compared the award to a preliminary injunction, which reduced the amount of a lien on property before a final determination on the merits. *Id.* The district court reasoned the interim award was "final and binding" and subject to judicial review because the award required "affirmative action" and would be meaningless if left unenforced. *Id.* at 694.

Unlike in *Southern Seas*, the PA Order is not an award on the merits but a procedural order that addresses claim filing requirements in the MCF. Plaintiffs argue the PA Order "directly impacts [their] rights to arbitrate" because it "requires information at the pleading stage that Plaintiffs are unable to obtain." (*Id.* at 15 n.12.) However, as Wells Fargo notes, Plaintiffs provided the information required by the PA Order in the subject Complaint, (*see* Compl. ¶¶ 16-19), and can do so in the MCF with Plaintiffs' and other customers' demands. As Wells Fargo also notes, when AAA invoiced Wells Fargo for the initial administrative filing fees associated with the arbitration demands, Wells Fargo paid those invoices on eight separate occasions for a total amount of $501,075, and will continue to do so with future AAA invoices. (Mot. at 7.)

Further, it is well-settled that questions of procedure relating to arbitration are not reviewable by courts. "In the absence of an express agreement to the contrary, procedural questions are submitted to the arbitrator, either explicitly or implicitly, along with the merits of the dispute." *McKesson Corp. v. Local 150 IBT*, 969 F.2d 831, 834 (9th Cir. 1992). "[P]rocedural questions which grow out of [a] dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010). Procedural questions include, for example, "whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 558 (1964). Ultimately, "the basic purpose of arbitration is the

speedy disposition of disputes without the expense and delay of extended court proceedings." *In re Sussex*, 781 F.3d 1065, 1072 (9th Cir. 2015) (citation and quotation omitted). "To permit what is in effect an appeal from an interlocutory ruling of the arbitrator would frustrate this purpose." *Id.* Here, the PA Order deals with procedure, namely pleading and filing requirements, to provide an orderly process for the MCF—all based on PA Shapiro's interpretation of the Supplementary Rules to which the parties agreed. As such, the PA Order is not a "final" order under *Millmen Local 550*, and is not subject to judicial review.

C.     **Stay or Dismissal of the Subject Case?**

Wells Fargo asks the Court to stay this case pending completion of each Plaintiff's arbitration, or in the alternative, dismiss the case without prejudice. "[A] district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). Here, the Court elects to dismiss the subject case without prejudice and allow the claims already submitted, and those yet to be submitted, in the AAA MCF proceedings to run their course.

### IV.
### CONCLUSION AND ORDER

For these reasons, Defendant's motion to compel arbitration is **GRANTED**, Plaintiffs' motion for preliminary injunction is **DENIED** as moot, and the case is dismissed without prejudice.

**IT IS SO ORDERED.**

Dated: May 1, 2023

_____
Hon. Dana M. Sabraw, Chief Judge
United States District Court